[L. A. No. 21893. In Bank. Nov. 20, 1951.]

CLIFFORD R. DABNEY et al., Appellants, v. MILTON H. PHILLEO et al., Respondents; REBECCA F. BOUGHTON et al., Interveners and Respondents.

[L. A. No. 21890. In Bank. Nov. 20, 1951.]

CLIFFORD R. DABNEY et al., Appellants, v. W. T. McDONALD, Respondent.

[L. A. No. 21891. In Bank. Nov. 20, 1951.]

CLIFFORD R. DABNEY et al., Appellants, v. JAMES R. WESTENGARD et al., Respondents.

[L. A. No. 21892. In Bank. Nov. 20, 1951.]

CLIFFORD R. DABNEY et al., Appellants, v. FLORENCE G. DABNEY, Respondent.

C. Paul DuBois and John E. Sisson for Appellants.

Dolley, Knight, Woods & Hightower, Roy P. Dolley, Tuttle & Tuttle, Edward W. Tuttle and Franklin L. Knox., Jr., for Respondents.

SCHAUER, J.—These are consolidated appeals, by plaintiffs Clifford R. Dabney and his wife, in four cases affecting plaintiffs' asserted interest in certain properties which are inventoried in the estate of Louise E. Dabney, deceased. The trial court sustained demurrers to the various complaints without leave to amend, made orders of dismissal in three cases, and rendered judgment that plaintiffs take nothing in the fourth. The main action (L.A. No. 21893) is against Milton H. Philleo, individually and as executor of the estate of Louise, and others. The amended complaint in that action, according to its title, is for "Declaratory Relief, Constructive Trust, Resulting Trust, Accounting, Quiet Title, Appointment of Receiver and Injunction"; it sets forth plaintiffs' claims, adverse to the estate, based on the alleged fraud of Joseph B. Dabney, predeceased husband of Louise and uncle of Clifford. Actions L.A. Nos. 21890, 21891 and 21892 are against persons to whom Clifford assigned fractional shares of his interest in all property which he "is, or will be, entitled to have distributed or otherwise paid to him from the . . . estate"; in these three actions plaintiffs seek declaratory relief and reformation of the assignments to limit the interest assigned to that of Clifford as heir of Louise. The trial court permitted the assignees to intervene in the main action, and plaintiffs filed cross-complaints against them which are identical with the complaints in actions L.A. Nos. 21890, 21891 and 21892.

We have concluded that the complaint in the main action states a cause of action; that the complaints and cross-complaints against the assignees show a justiciable controversy as to the effect of the assignments; that this controversy should be disposed of by judgments on the merits rather than by mere orders of dismissal; and that the controversy appears

on the present record to be one which should be resolved in the light of the testimonies of the parties to the assignments as to the circumstances under which they were executed.

In substance the pertinent allegations of the amended complaint in the main action are as follows: In 1920 Clifford and Joseph made "an oral arrangement" under which Clifford was to expend time and effort in locating and toward procuring "valuable oil lands or valuable oil interests" in the vicinity of the Signal Hill oil field, to send prospective transferors of such properties to Joseph in order that the properties might be acquired, and to contribute one-half the cost of acquisition; because of Joseph's vast resources and knowledge of the oil business, record title to the properties and their proceeds was to be vested in him and he was to finance their development; plaintiffs were to have an undivided one-half interest and Joseph an undivided one-half interest in the properties and their proceeds. Joseph did not intend to perform his undertakings and did intend to defraud plaintiffs. Clifford diligently performed until June, 1927; Joseph charged Clifford's account with about $40,000 which was "expended by . . . Joseph . . . in the purchase . . . of said oil lands, . . . interests . . ., and in the exploitation of the oil . . . from the same"; Joseph took legal title to and developed the properties, rendered written accountings to Clifford and regularly paid plaintiff "purportedly one-half of the amount accounted for." In June, 1927, Joseph falsely told Clifford that the properties were worthless, in some instances because of fatal clouds on title thereto and in other instances because they had become nonproductive, and that Joseph was quitclaiming or abandoning the interests. Plaintiffs believed Joseph's misrepresentations. As Joseph knew, Clifford at all times concerned had implicit faith and complete confidence in him as a relative, friend and skilled business advisor, and in all their relations and transactions relied unqualifiedly on him; such absolute faith and confidence continued until on or about October 15, 1949, and "plaintiffs had not any information to the contrary prior to said time." Joseph ostensibly quitclaimed or abandoned the interests but kept control of and developed them for his own benefit. He operated through companies and agents controlled by him and there were many dealings with the properties which were not of public record. Plaintiffs were not experienced in business practices of the types allegedly resorted to by Joseph in the handling of the properties and for the concealment of plaintiffs' interests and Joseph's

fraud in respect thereto. Joseph's fraud was known to his wife Louise and his business representative Philleo. They too had the complete confidence of plaintiffs, as they knew, and they too concealed the fraud from plaintiffs. On Joseph's death intestate in 1932 control of the properties passed to Louise and Philleo, coadministrators of the estate of Joseph. On Louise's death in 1945 control of the properties passed to Philleo, executor of her estate; thereafter he continued to use and operate them for the benefit of the estate.

The alleged circumstances of plaintiff's discovery of the fraud are as follows: In October, 1949, Clifford was in Philleo's office and heard Philleo, in a telephone conversation with a person unknown, state that he, as executor of the estate of Louise, would join as lessor in execution of an oil lease covering property called the Weber leasehold. Clifford recalled that an interest in the Weber leasehold had been one of the properties acquired under the oral arrangement with Joseph. Philleo observed Clifford's interest "at the mentioning of such joining as lessor, and forthwith became red of face and neck, and became confused, and . . . proceeded to terminate said telephone conversation abruptly." Philleo's manner and conduct at that time aroused Clifford's suspicions and as a result of his subsequent investigations of public records he learned of the fraud.

### Statute of Limitations and Laches in the Main Action

Defendants rely on the doctrine of laches, and also contend that the statute of limitations (three years; Code Civ. Proc., § 338, subd. 4) had run because plaintiffs should have discovered the fraud many years before they filed the main action (on February 1, 1950). ▆ The statute began to run when plaintiffs became "aware of facts which would make a reasonably prudent person suspicious"; and in a case such as this, which involves a fiduciary relationship, "facts which would ordinarily require investigation may not excite suspicion, and . . . the same degree of diligence is not required." (*Hobart* v. *Hobart Estate Co.* (1945), 26 Cal.2d 412, 438, 440 [159 P.2d 958]; *Wilkerson* v. *Seib* (1942), 20 Cal.2d 556, 561 [127 P.2d 904].) Defendants argue that no reasonable man would accept without inquiry Joseph's statement in 1927 that all the properties had become worthless or had fatal defects in title and that all the interests were being released or abandoned, when examination of the properties would have disclosed producing wells thereon and examination of public

records would have disclosed the state of the titles. ■ It cannot be held, as a matter of law, in the face of the detailed factual allegations hereinabove quoted or summarized, that Clifford was unreasonable in believing and relying on the statements of his uncle, whose relationship to Clifford was fiduciary in character and who was (it is alleged) apparently affectionate, interested in Clifford's personal and business welfare, and highly skilled in the oil business.

■ Defendants also rely upon matters which appear in the proceedings for probate of the estates of Joseph and Louise. These matters, they say, conclusively show that Clifford was put on notice at least by December, 1946, that some of the properties in question were listed as assets in the estate of Louise and were not valueless. Defendants ask that we take judicial notice of these matters (see *Hammell* v. *Britton* (1941), 19 Cal.2d 72, 75 [119 P.2d 333] ; *Willson* v. *Security-First Nat. Bk.* (1943), 21 Cal.2d 705, 712 [134 P.2d 806]) to support a determination that the statute of limitations has run. The facts on which defendants rely are the following : Clifford was an heir of Joseph and received a small inheritance when his estate was distributed. He was an heir of Louise, requested special notices in the probate of her estate, and appeared in person and by counsel in opposition to the executor's administration of the estate. In December, 1946, the inventory and appraisement in the estate of Louise were filed, and Philleo caused copies thereof to be mailed to the heirs, including Clifford. Properties which plaintiffs claim adversely to the estate, with their appraised values, are there listed as assets of the estate. These facts do not, as a matter of law, show that a reasonable person, in the circumstances alleged by plaintiffs, who was interested in the estate as an heir should have read the inventory and appraisement and discovered that he had an interest adverse to the estate in properties claimed by it. The mere passage of time and the deaths of his uncle and aunt and the scheduling of the assets claimed by the estate were not circumstances which would necessarily have caused a reasonable man, who 19 years previously had accepted the misrepresentations of the trusted uncle and who had continued to believe in him implicitly, to probe into the administration of the estate of the trusted aunt in an investigation of the truth of the particular misrepresentations which are alleged to have been made.

■ Since we cannot as a matter of law reject plaintiffs' explanation of their delay in discovering the fact we con-

clude that on the face of their pleading their cause of action did not arise until October, 1949. There has been no unreasonable delay[1] and no change in circumstances prejudicial to defendants since plaintiffs' discovery of the facts. Therefore, the cause of action does not appear to be barred either by limitations or by laches.

### Uncertainty of Allegations Which Describe the Oil Interests

█ The amended complaint in the main action does not allege exactly what interests in what properties are claimed by plaintiffs. It alleges that "according to plaintiff's best information and belief, the oil lands, oil interests and oil leases . . . acquired . . . pursuant to said oral arrangement . . . affect, concern and involve" 105 described parcels of land; that plaintiffs do not know the exact nature of the oil interests in such lands because the records of the complicated dealings therewith by Joseph, Louise, Philleo, and their companies and agents, are in the exclusive possession of defendants; that many of these transactions were not recorded; that the statements furnished by Joseph during the time he was apparently performing under the oral arrangement appeared regular and complete but Joseph secretly withheld interests. Plaintiffs ask leave to amend to include more exact descriptions when they discover the precise nature of their interests in the described lands and also, should they discover that they are entitled to interests in other lands, to include descriptions of such interests.

Defendants urge that from the vagueness of the description of the interests it is apparent that plaintiffs cannot state a cause of action because they do not know what properties they claim. The allegations of the complaint last above summarized sufficiently excuse and explain the want of allegations describing with more particularity the interests originally acquired under the oral arrangement and tracing these interests into their present form.

### Nature of the Cause of Action in the Main Action

The complaint in the main action purports to state four "causes of action." █ The first is entitled "Constructive Trust," and the complaint does allege, sufficiently as against general demurrer, a cause of action for imposition of a con-

---

[1] As noted above the original complaint in the main action was filed February 1, 1950.

structive trust; i.e., in a joint enterprise to which Clifford made substantial contributions Joseph took title to properties in his own name; he fraudulently promised, contrary to his secret intention, that he would hold a one-half interest therein in trust for plaintiffs; he kept control thereof while fraudulently representing to plaintiffs that the properties had become worthless and that he had abandoned them; and Louise took with knowledge of the fraud and not for value. (Civ. Code, §§ 2223, 2224; *Simpson* v. *Gillis* (1934), 1 Cal.2d 42, 54 [32 P.2d 1071].)

The so-called "Second Cause of Action" is entitled "Resulting Trust." No such cause of action is stated. A resulting trust arises to enforce the inferred intent of the parties. Here, plaintiffs have alleged that defendants at no time had an intent to hold the properties for plaintiffs' benefit but, rather, have claimed adversely to them; therefore, defendants hold as constructive rather than resulting trustees. (*Johnson* v. *Clark* (1936), 7 Cal.2d 529, 533 [61 P.2d 767]; *Bainbridge* v. *Stoner* (1940), 16 Cal.2d 423, 428 [106 P.2d 423].)

The so-called "Third Cause of Action" and "Fourth Cause of Action" are entitled, respectively, "Declaratory Relief" and "Quiet Title." Each incorporates by reference the allegations of the "First and Second Causes of Action" and neither adds any new allegations of significant facts. Only one cause of action is stated in the amended complaint (see *Ephraim* v. *Metropolitan Trust Co.* (1946), 28 Cal.2d 824, 833 [172 P.2d 501]; *Jackson* v. *Lacy* (1940), 37 Cal.App.2d 551, 561 [100 P.2d 313], and, if plaintiffs can establish that cause of action, enforcement of the constructive trust remedy, with such incidental relief as may be necessary, will effect what plaintiffs desire.

### Assignees' Right to Intervene

Plaintiffs urge that the assignees had no direct interest in the matter in litigation in the main action; that the assignees' interest was "consequential" and, therefore, they should not have been allowed to intervene. (*Jersey Maid Milk Products Co.* v. *Brock* (1939), 13 Cal.2d 661, 663 [91 P.2d 599]; *Allen* v. *California Water & Tel. Co.* (1947), 31 Cal.2d 104, 109 [187 P.2d 393].) In this plaintiffs are mistaken. The controversy in the main action is as to the ownership of certain property; the assignees assert "an interest in the matter in litigation" and were properly allowed to intervene. (Code Civ. Proc., § 387; *Goes* v. *Perry* (1941), 18 Cal.2d 373, 376 [115 P.2d 441].)

### Causes of Action Against the Assignees: Declaratory Relief

The material allegations of the complaint in action L.A. No. 21890 are as follows: In March, 1949, Clifford, by written assignment which was entitled and numbered in the proceeding for probate of the estate of Louise, transferred to defendant McDonald "one-fourth of his right . . . to all of the property . . . to which Seller [Clifford] is, or will be, entitled to have distributed or otherwise paid to him from the . . . estate, including also one-fourth of every other right and benefit of Seller in and to said estate." McDonald paid $10,000 for the assignment. It contains the following provisions:

"Seller hereby warrants and represents to Buyer that he has not sold, assigned, pledged, mortgaged or encumbered said one-fourth interest in said estate, or any portion thereof; that the same is his sole and separate property, and that his interest therein is free and clear of attachments, executions and other liens.

"Seller is entirely familiar with the value of his interest in said estate; that he has made his own investigation concerning such value, and considers the purchase price herein paid to be the fair and reasonable market value of his interest in said estate. Buyer has also made his own investigation concerning this purchase and Seller has made no representations to Buyer in connection therewith other than those set forth above."

The complaint further alleges: McDonald claims that by virtue of the assignment he owns not only Clifford's interest as an heir but also all claims of every kind which Clifford has against the estate of Louise. The agreement of Clifford and McDonald was that McDonald was to buy a fractional share of Clifford's interest as an heir only, but by mutual mistake the written assignment did not embody this agreement. The "mistake was made in that plaintiffs as of the date of execution of said assignment were ignorant of the fact that the Estate of Louise . . . claimed property or income therefrom or the re-investment proceeds therefrom, which said property belonged to plaintiffs." Defendant refuses to correct the mistake and threatens to interfere with plaintiffs' prosecution of their claim against the estate. Plaintiffs ask a declaration of rights under the assignment and reformation thereof to limit the interest transferred to that of Clifford as heir.

The other two actions against assignees of Clifford (L.A. No. 21891 and L.A. No. 21892) are materially similar to the above summarized complaint in L.A. No. 21890. In each case the trial court sustained a demurrer without leave to amend and ordered: ''Motion of defendant to dismiss complaint . . . is granted.'' The failure to declare the rights of the parties under the assignments was error. It is apparent that there was a justiciable controversy between plaintiffs and Clifford's assignees. The trial court should have expressly declared their rights. (*Essick* v. *City of Los Angeles* (1950), 34 Cal.2d 614, 624 [213 P.2d 492].)

The position alleged in plaintiffs' complaints against the assignees is inconsistent with that taken by plaintiffs on oral argument before the trial court and this court. From the allegations of the complaint it would seem that plaintiffs were erroneously[2] contending that the assignments transferred only Clifford's interest as an heir in the estate of Louise as such estate may be diminished by plaintiff's recovery in the main action. But from the oral argument on plaintiffs' behalf before the trial court and this court it appears that plaintiffs are contending that the assignments conveyed Clifford's share as heir in what the parties to the assignments then believed was the estate of Louise; i.e., a share in the properties claimed by the estate, undiminished by the then allegedly unknown adverse claim of plaintiffs. ▅▅▅ The fact that the complaints against the assignees contain allegations from which it appears that plaintiffs were advancing an erroneous contention of law in the controversy with the assignees does not deprive plaintiffs of the right to have that controversy determined.

▅▅▅ The assignees, in the justiciable controversy alleged in the complaints against them, continue to present, as they did before the trial court (and as appears on the face of the pleadings), two contentions which, as a practical matter, are inconsistent. First they contend, as the complaints against them allege, that the assignments by their terms conveyed to them all Clifford's interest as heir and also all his interest adverse to the estate (which would include his right to maintain the main action) ; second, they contend that the complaint in the main action shows that Clifford (and, therefore, they as his assignees) cannot maintain the claim adverse to the estate. Of course, the assignees are entitled to present the

---

[2]The error of this contention will appear from the discussion, *infra*, p. 72, of plaintiffs' attempt to state a cause of action for reformation.

second contention as an alternative in the event that the first is without merit. And if their first contention has merit they are nevertheless entitled to press the second and show that under their construction of the assignments they receive no more than they would under the construction urged by plaintiffs. But the bare dismissal of the complaints, if it determines anything as to these two contentions, determines that they are both correct, whereas, as shown *supra*, p. 66 et seq., the second is (as a question of law on the pleadings) without merit and, as will now be shown, the first cannot be determined as a matter of law on the face of the pleadings.

▉ The assignments do not precisely define the interest transferred. They repeatedly refer to Clifford's distributive share as heir, but they transfer his interest in all property distributed ''or otherwise paid'' from the estate. Whether this includes not only property received by Clifford as an heir but also property received by him as a result of establishing a claim adverse to the estate ''depends upon the intention of the parties [citations], and while that intention is determined primarily from the terms of the instrument, the language of the assignment must be construed in the light of the facts and circumstances of the particular case. [Citations.]'' (*Austin* v. *Hallmark Oil Co.* (1943), 21 Cal.2d 718, 730 [134 P.2d 777].) If the phrase ''otherwise paid'' was intended to mean ''paid to Clifford because he is an heir,'' then the assignees (by virtue of the assignments and the representation and warranty that Clifford's interest as an heir was free from any lien, which would include the lien of a constructive trust) would be entitled to receive a share of the estate equal to what Clifford as heir would have received from an estate undepleted by plaintiffs' claim (if it is established) in the main action, but the shares of the heirs other than Clifford would still be subject to reduction by plaintiffs' successful prosecution of their alleged cause of action (the establishment of a constructive trust effective as against persons other than the assignees) adverse to the estate.

*Causes of Action Against the Assignees: Reformation*

▉ No cause of action for reformation is stated. The alleged mutual mistake was the ignorance of Clifford and his assignees that there was property claimed by the estate of Louise to which Clifford and his wife had a claim adverse to the estate. Each assignment contains the representations that Clifford ''is entirely familiar with the value of his interest

in said estate; that he has made his own investigation concerning such value, and considers the purchase price herein paid to be the fair and reasonable market value of his interest in said estate," and the warranties quoted *supra,* page 69. To permit reformation of the assignments as requested by plaintiffs would allow Clifford to show that these representations and warranties are mistaken or false. This he cannot do, for there is a conclusive presumption of "The truth of the facts recited, from the recital in a written instrument between the parties thereto," and "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (Code Civ. Proc., § 1962, pars. 2 and 3.) Any claim of Clifford's wife in the properties assigned would be at the most an undisclosed equitable interest which could not be asserted against the bona fide assignees for value. (Civ. Code, §§ 856, 2243.) The recitals and warranties, conclusive against establishment of the claims adversely to the assignees, are, however, merely evidentiary in the litigation of such claims as against Philleo.

For the reasons above stated the judgment and orders appealed from are reversed, and the cause is remanded to the trial court with directions to permit plaintiffs to amend to meet the objections raised by special demurrer.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.