[Civ. No. 24405. Second Dist., Div. One. Sept. 7, 1960.]

JUNE GROSS, Respondent, v. DANFORD C. NEEDHAM, Appellant.

[Civ. No. 24451. Second Dist., Div. One. Sept. 7, 1960.]

Estate of R. E. GILLIGAN, Deceased. DANFORD C. NEED-HAM, as Administrator, etc., Appellant, v. JUNE GROSS, Respondent.

Kenny, Morris & Ibanez and Richard Ibanez for Appellant.

Gordon, Kidder & Price and Marshall E. Kidder for Respondent.

LILLIE, J.—The present matters, one a civil proceeding and the other in probate, were consolidated for trial at pretrial conference because of evidence common to both causes; separate judgments were rendered for plaintiff and petitioner, June Gross. Pursuant to stipulation, they have reached this court on a single reporter's transcript and one set of briefs and will be disposed of in such consolidated form.

In each proceeding the same persons are the litigants. June Gross (born Gilligan) is the half sister of Danford C. Needham (hereinafter referred to as Dan). When Dan was a child, his father died and his mother married Mr. Gilligan; June is the sole issue of that marriage, being 20 years younger than Dan. Upon her mother's death in 1939, June (then aged 12) went to live with her father at the home of her maternal grandmother in Los Angeles; she had little formal education, leaving school before completion of the eighth grade. Mr. Gilligan was injured in 1945 and had to be hospitalized until his death in December of that year. While her father was in the hospital, June took up residence at Dan's home (likewise in Los Angeles), remaining there till August of 1948; during most of that period she was employed, paying Dan $10 per week for room and board. At that time her only close relatives were Dan, her paternal grandmother and two paternal aunts. June testified that her father once told her "to count on Dan" in the event of any business transactions "because he felt his aunts weren't quite capable" of handling such matters.

Decedent Gilligan left no estate other than approximately

167 desert lots with few improvements thereon in the Salton Sea area of Imperial County; referred to in the briefs as the Bombay Beach Tract, this property is the subject matter involved in both actions which arose from certain events occurring in 1948. In July of that year, one month after June became 21 years of age, and before any probate proceedings were initiated with respect to Mr. Gilligan's estate, a deed was executed by Dan and June as ''grantors'' conveying the Bombay Beach Tract to themselves as ''grantees'' in joint tenancy, which instrument was recorded nine days later. On September 27, Dan filed a petition in the Superior Court of Los Angeles County for appointment as administrator of Mr. Gilligan's estate; letters were issued to him the following month. The Bombay Beach property, originally appraised at $3,390, was reappraised prior to litigation at $30,230.

On June 17, 1958, almost 10 years later, the present actions were commenced by June, who had married Floyd Gross in April of 1950. Subsequently (in 1951) June and her husband moved from California to New Mexico where he was employed by an agency of the federal government. The civil proceeding sought cancellation of the 1948 deed on the asserted grounds of fraud, duress and undue influence; it was further alleged that the falsity of certain representations by Dan was not discovered until approximately August of 1957. In the probate proceeding, the petition asked Dan's removal as administrator because of adverse interest and failure to render an accounting; when such accounting was filed, June by subsequent petition sought revocation of Dan's letters on the basis of her preferential right thereto (Prob. Code, §§ 450 et seq.). The trial court ordered cancellation of the 1948 deed on all the grounds alleged, and revoked Dan's letters because of his adverse interest, failure to render a proper accounting and June's preferential right to serve as Mr. Gilligan's representative. From these adverse judgments, following denial of a new trial, Dan has appealed.

Appellant's assignments of error may be stated thus: with respect to the civil proceeding, (1) the action is barred by the statute of limitations because (a) the complaint does not allege the circumstances under which the fraud was discovered (nearly nine years after its alleged perpetration) and (b) the court did not make a finding with respect thereto, and (2) there is no substantial evidence to support the findings and judgment; with respect to the probate matter, no legal basis

454

exists for the administrator's removal on the grounds as found below.

In the complaint to cancel the 1948 deed, it was alleged, among other things, that ''about the year 1946, when plaintiff was approximately 18 years of age, both parents being deceased, she moved into the home of the defendant (whose blood relationship was previously set forth) and resided with him and his family until approximately 1948 or 1949, being self-supporting during this period but being of limited formal education, relied upon the advice and judgment of the defendant in business and other matters''; there then follow allegations of evidentiary and ultimate facts which pertain to the fraud, undue influence and duress exerted by the defendant; it is then alleged that ''the plaintiff did not discover the falsity of the representations made to her by the defendant, as aforesaid, and did not discover that she had, by the execution and delivery of said Grant Deed (Joint Tenancy) dated July 24, 1948, divested herself of her right, title and interest in the said real property until about August, 1957'' when notification was received that a sale of the property was contemplated ''in connection with the matter of the Estate of Robert E. Gilligan.'' Appellant did not demur to the complaint; instead and by way of answer, he affirmatively pleaded the bar of sections 338, subdivision 4, and 318 of the Code of Civil Procedure. He now argues, citing such cases as *Lady Washington Consol. Co.* v. *Wood,* 113 Cal. 482 [45 P. 809], *Consolidated Reservoir & Power Co.* v. *Scarborough,* 216 Cal. 698 [16 P.2d 268], and *Daily Telegram Co.* v. *Long Beach Press Pub. Co.,* 133 Cal.App. 140 [23 P.2d 833], that to prevail in an action based on the exception to the controlling statutes (Code Civ. Proc., §§ 338, subdivision 4, and 348, three and four years respectively), the plaintiff must allege and prove facts showing the time and surrounding circumstances of the discovery of the cause of action upon which he or she relies; this, it is contended, respondent failed to do.

▪▪ As for the asserted applicability of section 348, Code of Civil Procedure, the claim comes too late since it was neither pleaded nor advanced upon the trial (*O'Keefe* v. *Aptos Land & Water Co.,* 134 Cal.App.2d 772, 780 [286 P.2d 417, 54 A.L.R.2d 462]); furthermore, section 318 (pleaded along with § 338, subd. 4) does not apply ''where the case presents a simple question of fraud or mistake.'' (*Cella* v. *Cosgro,* 115 Cal.App.2d 816, 820 [253 P.2d 57]). Under the circum-

stances, further comment on the point would serve no useful purpose.

Coming now to the argument that the instant appeal is controlled by the principles discussed in Lady Washington, Consolidated Reservoir Consol. Co. and Daily Telegram, *supra*, in all three cases a demurrer had been successfully interposed to the complaint and each decision was properly concerned only with the problem as to whether the pleading requirement had been met respecting the exception to the three-year limitation of section 338, subdivision 4 of the Code of Civil Procedure and not, as here (and as pointed out in *Consolidated Reservoir* at page 705), with a trial on the merits and the accompanying claim that any defect in the complaint had been cured by evidence adduced upon such trial (see also *Buxbom* v. *Smith*, 23 Cal.2d 535, 543 [145 P.2d 305].) ▮ The purpose of the pleading requirement, it has been declared, "is to afford the court a means of determining whether or not the discovery of the asserted invasion was made within the time alleged, that is, whether plaintiffs actually learned something they did not know. . . ." (*Bennett* v. *Hibernia Bank*, 47 Cal. 2d 540, 563 [305 P.2d 20].) ▮ In the application of this rule, the court goes on to say, "it is important to recognize the distinction between cases where a plaintiff is under a duty to inquire and those in which he has no such duty . . . for example, because of the existence of a fiduciary relationship (in which event), a plaintiff need not disprove that an earlier discovery could have been made upon a diligent inquiry but need show only that he made an actual discovery of hitherto unknown information within the statutory period before filing the action." (P. 563.) ▮ Appellant does not seriously contend that the facts constituting the confidential relationship are not specifically pleaded; although supporting evidence of the relationship is more detailed, respondent's lack of any formal education, the great disparity in the parties' ages, their close personal and blood relationship, and respondent's reliance upon appellant's advice and business judgment are set forth—and, while conclusionary allegations may be found therein, the pleading cannot be challenged on appeal in the absence of a special demurrer. (*Campbell* v. *Genshlea*, 180 Cal. 213, 218 [180 P. 336].) There is also an allegation that respondent did not discover the falsity of appellant's representations "until about August, 1957." ▮ The circumstances of the discovery, stated to be within approximately 10 months prior to the filing of the action, are

sufficiently alleged to meet the requirements of the relaxed rule mentioned in *Bennett* v. *Hibernia Bank, supra,* and numerous cases prior and subsequent thereto; thus, see *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412 [159 P.2d 958]; *Bainbridge* v. *Stoner,* 16 Cal.2d 423 [106 P.2d 423]; *Ramey* v. *General Petroleum Corp.,* 173 Cal.App.2d 386 [343 P.2d 787] and *Stevens v. Marco,* 147 Cal.App.2d 357 [305 P.2d 669].

Nor is there merit to the contention that the court did not make any finding that the circumstances of discovery occurred within the period prescribed by the statute; specifically, that there is no finding negativing the possibility that the means therefor existed prior to the filing date. Finding XIII declares that a confidential relationship "continued until approximately 1957 when plaintiff first learned that defendant was claiming to be owner of a half interest in the Bombay Beach Tract property"; Finding XV recites, among other things, that plaintiff did not discover the fraud "until about August, 1957, when she sought legal advice after receiving a communication from the then attorney for the Estate of Robert E. Gilligan announcing that the Bombay Beach Tract property would be sold." By expressly finding that respondent "*first learned*" in "approximately 1957" that appellant was claiming part ownership of the subject real property, coupled with its finding of a confidential relationship, the court impliedly rejected the claim that the fraud should or could have been discovered earlier. "(W)hile full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made." (*Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593].)

Next, appellant challenges the sufficiency of the evidence to support the findings and judgment—four of the findings being singled out for attack. First, it is claimed that there is no support for the finding that a confidential relationship existed between the parties from a date more than two years prior to 1948 until 1957. It has been repeatedly held that the amount of evidence necessary to establish such relationship ordinarily rests with the trier of fact (*Lillard* v. *Walsh,* 172 Cal.App.2d 674, 681 [342 P.2d 82]; *Kent* v. *First Trust & Savings Bank,* 101 Cal.App.2d 361 [225 P.2d 625]; *Sparks* v. *Sparks,* 101 Cal.App.2d 129, 135 [225 P.2d 238]; *Adams* v. *Talbott,* 61 Cal.App.2d 315, 320 [142 P.2d 775];

*Steinberg* v. *Steinberg,* 60 Cal.App.2d 116, 122 [140 P.2d 31]) ; in that connection, the trial court was entitled to consider whether confidence was in fact reposed "which invests the person trusted with an advantage in treating with the person so confiding" (*Cox* v. *Schnerr,* 172 Cal. 371, 378 [156 P. 509]) as well as the blood relationship between the parties which "is an important factor in determining whether in fact a confidential relationship existed." (*Johnson* v. *Clark,* 7 Cal.2d 529, 534 [61 P.2d 767].) ▮▮▮▮ Upon her father's death, Dan became June's closest blood relative. She was then 18 years old, unmarried and 20 years Dan's junior. While a member of Dan's household, she cared for his wife and baby and performed other household chores. There was evidence that June's father had suggested to her that she depend on Dan for business advice; the record also reveals that Dan aided respondent in securing employment and obtaining unemployment insurance. The above circumstances, antedating or contemporaneous with the execution of the deed in 1948, clearly warranted the finding presently challenged. It is contended, however, that respondent's period of residence in Dan's home was punctuated with numerous quarrels—they are described in appellant's closing brief as "years of strife and concern"—over Dan's rights (often asserted) to one-half of the property; it is further pointed out that respondent left Dan's household almost immediately after the deed was executed and their relations thereafter were never friendly. Citing *Estate of Llewellyn,* 83 Cal.App.2d 534, 562 [189 P.2d 822, 191 P.2d 419], appellant argues that the record in the instant appeal likewise reflects a certain amount of hostility between the parties which negatives any inference that trust and confidence were reposed. As so often necessary to observe, each case must rest on its own facts; thus, in Llewellyn there was no evidence that at any time appellant handled the decedent's business affairs; also, the latter was 78 years old when the will in suit was executed and for most of his adult life had been actively engaged in business, factors which serve to distinguish the case from the one at bar. Furthermore, the record does not bear out the claim that the parties' relations did in fact remain unfriendly after respondent's departure from Dan's home; for example, appellant himself elicited testimony (through his wife) that as late as 1956 the parties were exchanging social calls or visits which belie any suggestion that they were estranged or other than friendly. Viewed in the light of the familiar rule limiting the powers of a re-

viewing court, we are persuaded that the finding under attack must be sustained.

The second finding challenged declares that the respondent did not discover appellant's fraud until 1957; "(t)he evidence," says appellant, "gives rise to no other reasonable inference except that respondent either knew, or ought to have known, prior to three years from the filing of her fraud action in the court below, those matters about which she now complains." ██ ██ Preliminarily the statute begins to run against a plaintiff asserting fraud when he becomes "aware of the facts which would make a reasonably prudent person suspicious" (*Dabney* v. *Philleo,* 38 Cal.2d 60, 65 [237 P.2d 648]), and the same degree of diligence is not required where a fiduciary relationship is involved (*Dabney* v. *Philleo, supra,* 65) ; even if such relationship (which we have found to exist) might be said to have terminated shortly after the execution of the deed, it was for the trier of fact to determine whether respondent was negligent in continuing to rely on the representations made to her by appellant. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 440 [159 P.2d 958].) It is argued that respondent was in a "safe condition of imperceptibility" from July of 1948 until 1957; pointed out by appellant are certain exhibits and episodes which, it is asserted, should have given respondent knowledge or put her on notice that the situation was not what she deemed it to be.

██ The weight to be accorded these exhibits and episodes was properly for the trial court in the first instance; their probative value rested with the trier of fact (Code Civ. Proc., § 2061) who was the exclusive judge of the credibility of witnesses. (Code Civ. Proc., § 1847.) ██ The first exhibit (Exhibit E) purported to authorize an attorney named Rheinschild to probate the estate and distribute one-half thereof to appellant. Dated June 29, 1948, it read as follows: "To whom it may concern : I hereby authorize William Rheinschild to probate the estate of Robert E. Gilligan (my father) to be equally divided between my brother (Dan C. Needham) and I (June R. Gilligan)," followed by the signature "June Gilligan." Respondent testified that the signature looked like hers although the document was not in her handwriting; later she stated that she never signed anything resembling such a document and related an incident when Dan had her sign her name on a blank piece of paper on the representation that he wished to see if her handwriting had improved. Mr. Rheinschild, called as a witness by appellant, was unable to throw

any light on the identity of the signer. Appellant testified that he never knew of the document's existence until shortly before the trial. In view of the mysterious circumstances surrounding the exhibit's origin, coupled with respondent's testimony that she would have written the document herself if she had intended to sign such an instrument, it may not be said as a matter of law that knowledge of any fraud was thereby imparted to respondent. The same result must be reached with respect to another exhibit (Exhibit 2), an undated document entitled "Nomination of Administrator." It was allegedly signed by respondent; she testified that she had no knowledge of ever signing it, although admitting the signature resembled hers; however, Rheinschild had no recollection concerning June's execution of the instrument—in fact, he could not recall the particular occasion when it was supposedly executed in his office. The trial court found that there was no evidence tending to show the date, place and circumstances under which the exhibit was purportedly signed by respondent, and that because of her limited education and intelligence she did not understand the nature and effect thereof. Two more exhibits (Exhibits F and G) are also said to have put respondent on notice. Captioned "Assignment of Distributive Share" and "Plan of Payment Agreement," they were assertedly executed by June under the following circumstances. Mr. Gilligan died in the General Hospital and was indebted to the county of Los Angeles for services there rendered; Dan testified that June went with him to the Bureau of Resources and Collections on September 14, 1949, and that the exhibits were signed by her that same day. She denied that she executed either document; she also denied, as claimed by Dan, that she was still a resident of his household and produced a trailer registration certificate issued to her at a different address. Before the original file of the bureau was brought to the court, counsel for appellant confronted June with a copy of the "Plan of Payment of Agreement" which she denied signing; later, when the bureau file was produced, it disclosed that the original document did not contain June's signature, but only the signature of Dan. Interestingly enough, also, there is this note (dated September 14) by an agency investigator in the bureau's file: "Administrator in office regarding County of Los Angeles claim, executed assignment of interest and reimbursement agreement to pay, *agreed to obtain sister's signature to assignment.*" The trial court presumably and properly drew inferences adverse to Dan from the facts

above set forth. ▮ Nor should respondent, as appellant urges, be charged with constructive notice of the fraudulent representations in suit by virtue of the subsequent recording of the ''Assignment of Distributive Share'' as well as the 1948 deed. ''Where fraud is involved, public records are not constructive notice of the true facts to the defrauded party (citations).'' (*Regus* v. *Schartkoff*, 156 Cal.App.2d 382, 389 [319 P.2d 721].)

▮ As to the circumstances prior to and surrounding the execution of the deed itself, appellant emphasizes the evidence produced on his behalf and discounts or disregards much of the evidence produced by respondent—in this fashion, quite a persuasive showing is made that the challenged finding may not stand as a matter of law; on appeal, however, it is axiomatic that the power of a reviewing court begins and ends with a determination of whether there is in the record substantial evidence, contradicted or uncontradicted, which supports the result reached, and we must also assume in favor of the determination below the existence of every fact which the trier of facts could have reasonably deduced from the evidence. According to June, Dan told her that he wanted to build a bar and dance hall on the property and that the execution of the deed would in no way involve the loss of her interest in the land. Dan admitted that June had not much to say at the notary's office; this was her first experience in a real estate transaction, although as to Dan the situation was otherwise. Furthermore, it is undisputed that she did not have the benefit of independent advice as to the legal effect of the instrument.

▮ Since courts do not hesitate to grant relief to a defrauded party when a person in a confidential relationship obtains a deed through false representations as to the legal effect of the instrument (*Steiner* v. *Steiner*, 160 Cal.App.2d 665, 669 [325 P.2d 109]), the trial court was justified in taking the absence of such advice into consideration in formulating its decision. (*Rieger* v. *Rich*, 163 Cal.App.2d 651, 665-666 [329 P.2d 770].) We have heretofore alluded to the period of years following the execution of the instrument; although their relations were not estranged, Dan never asserted any claim of ownership until 1957. In the last analysis, it was for the trial court to make comparisons of the conduct and intelligence of the parties; we are not persuaded that the criticized finding is without evidentiary support.

▮ The next finding which is challenged states that there was no consideration for the deed. Appellant admitted

he gave no money or thing of value for the interest acquired thereunder, although he makes mention of his "stewardship" of the estate from the date of his appointment as administrator on October 19, 1948. In that connection, it appears that expenses in connection with the upkeep of the Bombay Beach Tract, totalling $1,376.84, have been paid by Dan; however, it is not argued that these and other monies advanced by Dan are not recoverable from the estate nor, in view of the acknowledged land boom in the Salton Sea area, that Dan was actively responsible for the increase in the value of the property during the intervening years. Too, in view of the situation of the parties, it was for the appellant to show by testimony that was clear, positive and of such a nature that it could not be rationally disbelieved (*Bank of America* v. *Crawford,* 69 Cal.App.2d 697, 701 [160 P.2d 169]) that the transaction was in all respects fair.

 Finally, it is argued that there is no support for the finding that the deed was procured as the result of fraud, duress and undue influence. While but one of the above elements would be sufficient to vitiate the transaction (Civ. Code, § 1567), we briefly consider the assignment that none of the three elements were here present. Duress, which includes whatever destroys one's free agency and constrains him to do what is against his will, may be exercised by threats, importunity or any species of mental coercion (9 Cal.Jur.2d, Cancellation of Instruments, § 16.) June testified about an argument immediately preceding the execution of the instrument; according to her testimony, Dan stated: "Well, the time's getting short now and I'm tired of arguing over it, something is going to be done today, and I mean now."; later during this same argument which lasted from three o'clock until five or five-thirty, Dan declared: "We've only got about an hour or half hour left and it's getting close for that notary to close . . . You are going to have to sign today because Monday morning you won't have anything. You'd better make up your mind whether you are going to lose it or whether you are going to sign this paper or lose your property." The words and conduct above set forth clearly come within the framework of the authority heretofore cited. As to the element of undue influence, there can be no doubt that Dan actively participated in the transaction and equally without question is the fact that by such transaction he obtained an advantage which enriched him. The rule is inflexible that no one who holds a confidential relation toward

another shall take advantage of that relation in favor of himself, or deal with the other person upon terms of his own making; that in every transaction between persons standing in that relation, the law will presume that he who held the influence over the other exercised it unduly to his own advantage. (*Khoury* v. *Barham*, 85 Cal.App.2d 202, 212 [192 P.2d 823].) ▇▇▇ The trial court, as was its duty, viewed the present transaction with "the most scrutinizing jealousy" (*Mead* v. *Mead*, 41 Cal.App. 280, 285 [182 P. 761]) and properly determined that the applicable presumption was not overcome. Nor are we persuaded that the instant does not support respondent's claim of fraud. ▇▇▇ In this type of case, if there is substantial evidence to support the findings with respect to any *one* material representation or concealment the judgment must be affirmed. (*De Spirito* v. *Andrews*, 151 Cal. App.2d 126, 131 [311 P.2d 173].) ▇▇▇ The record before us reveals that on at least one occasion Dan told June that the execution of the deed would in no way involve her property and that she would not thereby be divested of her interest therein. This misrepresentation was manifestly made with knowledge of its falsity and with the intention that June act in reliance thereon. (*Seeger* v. *Odell*, 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291].)

Coming now to the appeal in the probate proceeding, it is contended that there is no legal basis for appellant's removal on the grounds found below, namely, conflict of interest, failure to render a proper account and prior rights of respondent to letters. Parenthetically, while the court signed findings (similar to those in the civil case) that fraud, duress and undue influence had been exercised, the administrator's removal was sought only on the three grounds stated above, and the trial court made its order accordingly. With respect to adverse interest, appellant simply renews his argument that the court erred in adjudging the 1948 deed invalid, and we have already disposed of this claim; he also cites *Estate of Meyers*, 130 Cal.App.2d 145 [278 P.2d 471], which is not particularly helpful to his position since it was there held that the question of adverse interest is a factual one depending upon circumstances of the particular case (p. 149). ▇▇▇ Under the heading "Adverse Interest" (20 Cal.Jur.2d, Executors and Administrators, § 200) it is said that if a representative asserts an adverse claim to property of the estate without sufficient reason, or his general conduct in the transaction on which he bases his claim evinces a lack of in-

tegrity to such a degree as to render him unfit to act as representative, his removal is proper, citing *Estate of Kromery,* 98 Cal.App.2d 639 [220 P.2d 805]. There it was stated (p. 645) that "it is clear that the learned trial judge reached the conclusion that appellant . . . took advantage of the confidential relationship that existed . . . and thereby improperly gained possession of a large amount of money and other personal property which he claimed was a gift, and that his general conduct in such transaction . . . was such as to show a lack of integrity to such a degree as to make him unfit to be the administrator of any estate." The general reasoning of the cited case is here applicable, although the facts in the matter at bar may not be as aggravated. The record also supports the finding that appellant failed to render a proper account; specifically, appellant sold beer and nonalcoholic beverages on the premises for some 17 months without any accounting to the court until respondent filed her petition for removal. Lastly, respondent was entitled to prior rights as administratrix (Prob. Code, §§ 450 et seq.) since it was impliedly found in the civil proceeding that she had no prior notice of Dan's petition for letters and consequently never waived the right granted by statute. The probate court has a wide discretion in determining whether the facts of a particular case warrant the removal of a representative; no abuse of such discretion has here been made manifest.

 Appellant has urged one final point. Prior to the preparation of the court's findings, appellant submitted a request for 27 specific findings in the civil case and 20 specific findings in the probate proceeding. These requested findings related mostly to evidentiary matters and were disregarded; error on the court's part is claimed. There would seem to be no merit to such claim. (*Gschwend* v. *Stoll,* 104 Cal.App.2d 806, 808 [232 P.2d 494]; *Fischer* v. *Ostby,* 127 Cal.App.2d 528, 531 [274 P.2d 221].)

The judgments appealed from are affirmed.

Fourt, Acting P. J., and Scott (Robert H.), J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.