[Civ. No. 95.    Fifth Dist.    May 15, 1962.]

THE GRANGE COMPANY, Plaintiff and Respondent, v. FRANK D. SIMMONS et al., Defendants, Cross-defendants and Appellants; HERMAN SAHLMAN et al., Defendants, Cross-complainants and Appellants.

Carlos J. Badger for Defendants, Cross-complainants and Appellants.

F. M. Brack for Defendants, Cross-defendants and Appellants.

CONLEY, P. J.—The plaintiff, The Grange Company, a corporation, sued Frank D. Simmons and Addie Mae Simmons, his wife, and Herman Sahlman and Dorothy E. Sahlman, his wife, to compel them to disconnect the roof of a warehouse from the supports furnished by adjoining buildings owned by plaintiff and to remodel the warehouse in conformity with covenants contained in deeds by which the de-

fendants, successively, obtained title. The Sahlmans cross-complained against Mr. and Mrs. Simmons for damages by reason of alleged fraud in the exchange of the warehouse and a boat for property owned by them.

By its judgment, the court required all of the defendants ". . . to remove the roof of the building . . . and to construct supports for the roof of said building entirely on land presently owned by SAHLMANS," and awarded damages in favor of the Sahlmans against the Simmonses for $14,300 with interest and costs, with the proviso that the latter may discharge their obligation either by completing the remodeling of the warehouse to the satisfaction of The Grange Company, or by depositing $14,300, interest and costs ". . . in a suitable escrow, to be paid to the SAHLMANS when they have complied with the terms of the judgment in favor of [T]he GRANGE COMPANY."

The plaintiff is satisfied with the judgment on the complaint, and it does not appeal. The defendants Herman Sahlman and Dorothy E. Sahlman do not appeal from the judgment in favor of plaintiff, and they specifically concede that it is correct, but they do question the judgment on the cross-complaint on the ground that the damages awarded to them are inadequate. The defendants Simmons appeal from the entire judgment; they concede that the covenant in question ran with the land and admit that the Sahlmans are responsible to plaintiff, but they maintain that the covenant was not personal in nature and that it therefore does not bind them; aside from the bare statement that they should not be required to share the cost of replacing the roof, their briefs are silent on the subject, and no authorities are cited in support of their position; their appeal on the cross-complaint is founded on the contention that they were not guilty of any fraud.

Before January 30, 1950, The Grange Company had constructed a group of three adjoining warehouses near the northerly city limits of Modesto. On that date, plaintiff deeded the warehouse in question to Olson Brothers Egg and Poultry, Inc., a corporation; this warehouse was the northerly building of the group of three; it faced east; it had no south or west walls of its own, but its roof rested on the concrete pilasters and walls of the adjoining warehouses. Its east, or front wall, its north wall and its roof were all constructed of galvanized iron. The deed required the grantee on demand to remove the roof from the adjoining Grange Company walls.

By deed dated May 28, 1953, the defendant Frank D. Sim-

mons secured title to the warehouse from the Olson Brothers; he was specifically advised of the requirement for the removal of the roof, and as at that time the estimated cost of complying with the covenant was approximately $2,500, Simmons secured a $2,000 discount from his originally agreed price for the warehouse from Olson Brothers. Later, an additional strip of land bordering the warehouse was deeded by The Grange Company to Simmons in order to give him ample leeway to make the changes in question, and this deed contained covenants and restrictions to the same effect as the former deed.

Mr. Simmons used the warehouse for processing and storing turkey eggs until July 1954, at which time he sold his business to a former employee, Leonard Link; the latter, as lessee, took possession of the warehouse and carried on business there until his death in October of 1959.

In March 1959, Mr. and Mrs. Sahlman, the owners of a motel in Santa Clara County, authorized the sale or exchange of their property by signing a contract with Spratt & Dixon, real estate agents. The latter communicated with Mr. and Mrs. Simmons after Simmons wrote them in reply to a newspaper advertisement, asking about the possibilities of a trade. Under date of May 14, 1959, Mr. Simmons represented by letter to them that the warehouse was free and clear and that there was no present written lease, but that the tenant who had been there for some time would sign a new five-year lease at a monthly rental of $400.

On May 22, 1959, Spratt & Dixon brought Mr. and Mrs. Sahlman to Modesto; they met Mr. Simmons at the warehouse, where Leonard Link was operating his turkey egg business, looked at the building both inside and outside and discussed it for a total of 20 or 30 minutes. While the evidence as to their conversation was conflicting, we are bound by the account given by the Sahlmans which formed the basis for the trial court's finding of fraud. Mr. Sahlman testified that while they were inside the warehouse,

"A. . . . at one point when we were at the very rear of the building, Mr. Simmons patted on the wall and said, 'Look how solid these walls are, and they will last a life time. The roof, too, is made of tin; it will last almost forever.'

"Q. Now, did you notice a difference in the type of walls in the building? A. Yes, some of the walls were made out of cement bricks, and some of the walls were made out of sheet metal.

"Q. As to which type of walls was this reference that you

said Mr. Simmons made pertain to? A. To the brick wall, or block wall."

On June 2, 1959, while Mr. Simmons was in Hawaii, Mrs. Simmons telephoned to Arlo Turner, President of The Grange Company "That she had applied for a Forty Thousand Dollar loan on the property at the bank, and the bank had discovered this cloud on the title and if anybody called me about it, would I refrain from telling them anything about it." Mr. Turner testified that he then told her to remove the roof from The Grange Company walls immediately, unless she heard from him in 24 hours. The court found that Mrs. Simmons told her husband, upon his return from Hawaii, of the conversation with Mr. Turner.

As of June 29, 1959, Spratt & Dixon induced the Sahlmans to make a written offer to Mr. and Mrs. Simmons to trade their equity in the motel for Simmonses' warehouse and boat, the "Blue Moon," subject to their inspection and approval of the boat. This document was brought to Modesto by Spratt & Dixon, and Mr. and Mrs. Simmons accepted and signed it. On the same day, Spratt & Dixon ordered two preliminary reports of title from the Stanislaus County Title Company, one covering the motel property and the other the warehouse in Stanislaus County. On or about July 3, 1959, Stanislaus County Title Company mailed a copy of the preliminary report relative to the warehouse to Spratt & Dixon. This report contained references to the appropriate recorded deeds in which the covenants and restrictions were contained.

On July 7, 1959, the Simmonses removed their boat to dry dock at Stockton, where it was inspected by the Sahlmans and surveyed and appraised by a Mr. Golightly, their own expert.

On July 21, 1959, the Sahlmans gave final approval to the contract for the exchange of properties by initialing the June 29, 1959, contract. Two days later, Spratt & Dixon prepared, and Mr. and Mrs. Sahlman signed, escrow instructions to the title company. This document was brought to Modesto, where Mr. and Mrs. Simmons signed it and it was deposited with the title company. On July 29, 1959, the parties amended their escrow instructions, and on August 1, 1959, the Simmonses took possession of the motel at Mountain View.

On August 14, 1959, the escrow was closed by the title company, and the various documents were recorded. A week later the title company mailed to Mr. and Mrs. Sahlman a policy of title insurance on the warehouse, which included the same reference to the deeds containing the covenants and

reservations that were included in the preliminary report of title. The Sahlmans received these documents on August 22, 1959, and having read the policy of title insurance with great care, they went to Modesto, where they discussed the covenants and reservations with title company employees, Leonard Link, the tenant, Mr. Arlo Turner, President of The Grange Company, and Mr. Edward T. Taylor, attorney for The Grange Company. On September 23, 1959, The Grange Company, through its attorney, made formal demand on both the Simmonses and the Sahlmans that the roof be removed from the walls of The Grange Company's warehouses.

The trial court had ample justification for holding Mr. and Mrs. Simmons as well as the Sahlmans responsible to the plaintiff. The covenant contained in the conveyances by The Grange Company required that Simmons effectuate the changes in question upon demand by The Grange Company.

As is said in 21 Corpus Juris Secundum, Covenants, section 8, page 887: "As a general rule, . . . the acceptance of a deed, whether poll or inter partes, containing a covenant on the part of the grantee is equivalent to an agreement on his part to perform the same, and it is immaterial that the deed is not signed, sealed, or executed by him." (See *Pedro* v. *County of Humboldt*, 217 Cal. 493 [19 P.2d 776] ; *Marshall* v. *Standard Oil Co.*, 17 Cal.App.2d 19 [61 P.2d 520] ; *Barrows* v. *Jackson*, 112 Cal.App.2d 534, 538 [247 P.2d 99].)

In 14 California Jurisprudence 2d, Covenants, Etc., section 13, page 19, it is said: "It should not be assumed that because a covenant runs with the land the liability to perform shifts to the assignee so as to relieve the original covenantor from his obligation. The liability of the original grantee of a deed is established by privity of contract, and the fact that the covenant runs with the land does not discharge his responsibility. This is true even where the parties expressly stipulate that the covenant is to run with the land." (See also *California Packing Corp.* v. *Grove*, 51 Cal.App. 253 [196 P. 891] ; *Barrows* v. *Jackson, supra,* 112 Cal.App.2d 534.) There is no error in the judgment on the complaint which holds both Simmons and Sahlman responsible for the removal of the roof and the redesign of the warehouse building.

On their appeal on the cross-complaint, Mr. and Mrs. Simmons maintain that the court was not justified in finding them liable. The court found as follows:

"That in order to induce SAHLMANS to enter into the exchange of real and personal property set forth in the exchange

agreement admitted in evidence as Exhibit BB, SIMMONS did, on or about the said 22nd day of May, 1959, falsely and fraudulently represent to SAHLMANS that the property was 'free and clear' and that the walls and roof of the warehouse would 'last a lifetime' and would 'never have to be replaced'; SIMMONS further wilfully concealed, suppressed and failed to disclose to SAHLMANS that the property was not free and clear; that there existed easements, restrictions, conditions and covenants in favor of [T]he GRANGE COMPANY, and that pursuant to said restrictions, conditions, easements and covenants said GRANGE COMPANY had theretofore elected to exercise its option thereunder and gave notice to SIMMONS to disengage the roof of the warehouse at the expense of SIMMONS and to remove two of the walls of said warehouse, all as more fully set forth in the Complaint of [T]he GRANGE COMPANY, on file herein.

"SIMMONS well knew at the time of said representations, suppression, concealment and non-disclosure that the walls and roof would not last a lifetime or never have to be replaced, but in truth and in fact well knew that the same would have to be removed at the expense of SIMMONS in the near future, pursuant to the election of [T]he GRANGE COMPANY, hereinabove alleged and confirmed by a conversation with ADDIE MAE SIMMONS on or about June 2, 1959, which conversation was duly discussed with her husband before the execution of the exchange agreement between SIMMONS[ES] and SAHLMANS.

"SIMMONS made said representations, concealment, suppression and non-disclosure with intent to induce SAHLMANS to exchange the property mentioned in Exhibit BB and to accept a deed to the warehouse. SIMMONS[ES] were guilty of fraud in failing to disclose the rights and demands of [T]he GRANGE COMPANY in the property sold prior to the execution of the exchange agreement.

"SAHLMANS had no knowledge of the existence, nature or extent of any such conditions, restrictions, easements and covenants in favor of [T]he GRANGE COMPANY, as hereinabove alleged, prior to August 22, 1959. SIMMONS' false and fraudulent representations, concealment, suppression and non-disclosure misled and lulled SAHLMANS into a false sense of security concerning said walls and roof; and relying on the same, SAHLMANS were induced to and did make said exchange of properties and accept a deed to the warehouse from SIMMONS[ES]. SAHLMANS would not have made or performed said exchange of properties had they known the true facts.

"That on or about 29 June 1959, SAHLMANS' agents, Spratt & Dixon, ordered a preliminary report from Stanislaus County Title Company. Pursuant thereto, Stanislaus County Title Company mailed a copy of said preliminary report to SAHLMANS' agent Spratt & Dixon on or about 3 July 1959, and *prior to the time SAHLMANS instructed said title company to close said escrow,* but not before they signed the exchange agreement. Neither Spratt nor Dixon showed SAHLMANS said preliminary title report, or advised them of its existence."

"A reasonable person by inspection would not be put on notice that the south and west brick walls of the warehouse were common to [T]he GRANGE COMPANY improvements and the warehouse purchased by SAHLMANS from SIMMONS[ES], nor would said person be put on notice that said walls supported the roofs of the adjoining buildings."

■ It is elementary that a single material misrepresentation, knowingly made by a vendor which is justifiably relied upon to the damage of the vendee, will warrant a recovery by the defrauded person of damages for the difference between the actual value of that with which he parted and that which he received, "together with any additional damage arising from the particular transaction." (Civ. Code, § 3343.) (See *Davis* v. *Butler,* 154 Cal. 623 [98 P. 1047]; *Younis* v. *Hart,* 59 Cal.App.2d 99, 103 [138 P.2d 323]; *Richard* v. *Baker,* 141 Cal.App.2d 857 [297 P.2d 674]; *Zinn* v. *Ex-Cell-O Corp.,* 24 Cal.2d 290, 295 [149 P.2d 177]; *Sixta* v. *Ochsner,* 187 Cal. App.2d 485 [9 Cal.Rptr. 617].)

Actual fraud consists, among other things, in "The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; . . ." or "The suppression of that which is true, by one having knowledge or belief of the fact; . . ." (Civ. Code, § 1572, subds. 1, 3.) "Actual fraud is always a question of fact." (Civ. Code, § 1574.) ■ The evidence in this case amply supports the court's finding of fraud.

■ But the Simmonses maintain that there is a failure of proof that the Sahlmans justifiably relied on the fraudulent misrepresentations, pointing out that "In order that an action may lie, at law or in equity, on account of a fraudulent misrepresentation, the party to whom it was made must have acted in reliance thereon and must have been justified in such reliance." (23 Cal.Jur.2d, Fraud and Deceit, § 29, p. 71.)

In this connection, it is the claim of the appellants that the

preliminary report of title which the Stanislaus County Title Company sent to Spratt & Dixon contained a listing of recorded deeds which, if consulted, would have shown the covenants and restrictions in question. They argue correctly that Spratt & Dixon were the agents of the Sahlmans and that knowledge of an agent is knowledge of the principal; they point out that the Stanislaus County Title Company mailed this preliminary report to Spratt & Dixon. Although the latter testified that they do not recall ever having received the letter, this constitutes only a conflict in the evidence, as it is presumed that a letter regularly mailed was received in due course by the addressee. (Code Civ. Proc., § 1963, subd. 24; 18 Cal.Jur.2d, Evidence, § 92, pp. 522-524.)

It appears to us that this contention made by the Simmonses as to the evidence is correct and that it must be assumed that the Sahlmans had constructive notice of the preliminary report; but this does not conclude the question of liability, for ''Every contracting party has the right to rely, where his reliance is otherwise justifiable, on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement; and he is under no obligation to investigate and verify statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith.'' (23 Cal.Jur.2d, Fraud and Deceit, § 35, p. 84.)

It is further said in the last-cited authority at pages 85-86: ''Where one is justified in relying and in fact does rely on false representations, his right of action is not destroyed because means of knowledge were open to him. In such a case, no duty rests on him to employ such means of knowledge, even though by reason thereof, in the absence of any representation at all, a constructive notice would be inferred. The doctrine of constructive notice does not apply where there has been such a representation of fact. If the representation is of a character to induce action and does induce it, that is enough. It matters not that a person misled may be, in some loose sense, negligent, for it is said not to be just that a man who deceives another should be permitted to say to him, 'You ought not to believe or trust me,' or, 'You are yourself guilty of negligence.' '' (See *Teague* v. *Hall*, 171 Cal. 668 [154 P. 851]; *French* v. *Freeman*, 191 Cal. 579 [217 P. 515]; *Seeger* v. *Odell*, 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291].)

█ A person who is victimized by a fraudulent misrepresentation is not held to constructive notice of a public record which would have revealed the true facts, as the purpose of the recording acts is to protect bona fide purchasers for value and not those who indulge in fraud. (*Seeger* v. *Odell, supra,* 18 Cal.2d 409, 414-415; *Rogers* v. *Warden,* 20 Cal.2d 286 [125 P.2d 7]; Rest., Torts, § 540.)

█ The trial record contains ample evidence to sustain the finding that the material misrepresentations of Frank D. Simmons were justifiably relied upon by the cross-complainants. (Prosser on Torts (2d ed. 1955) § 89, pp. 550-556.)

█ As appellants from the judgment on the cross-complaint, the Sahlmans urge that the court did not award them sufficient damages by limiting the judgment in their favor to $14,300. As shown by the pretrial conference order, the Sahlmans originally prayed for $10,000 on the cross-complaint; this amount was raised by amendment to $13,000 at the time of the pretrial conference; by their amended cross-complaint filed after trial on March 21, 1961, pursuant to permission granted during the trial, the claim of damages on the cross-complaint was increased to $44,577.37, ". . . being the difference between the fair market value of the warehouse and the boat and the sum paid therefor," interest at 7 per cent per annum thereon after August 14, 1959, the sum of $13,000 ". . . as and for the costs of complying with the order prayed for by plaintiff's complaint," the sum of $5,000 ". . . being the value of the easement in favor of plaintiff," the sum of $800 ". . . as and for the loss of rental during the period of said repairs and reconstruction," exemplary damages in the sum of $10,000, and costs. A further amendment to the cross-complaint was filed March 24, 1962.

It appears that the trial court had ample ground to determine as it did, that the extent of the damages suffered by the cross-complainants was limited to $14,300. The difficulty with the Sahlmans' argument with respect to additional damages is that they set out only the evidence which tends to support their view of the facts.

The findings in the case are not as detailed as one might wish, but the appellants are in no position to complain. In fact, they do not complain. They do not urge that the findings are insufficient in form or in substance. And, as a matter of fact, the record shows that counsel for both appellants endorsed their approval of the findings as to form on the docu-

ment itself, presumably before it was signed by the trial judge.

As is said in *Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593] : ''[W]hile full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made. (See 24 Cal.Jur. 974, § 207, and cases cited.)'' (See also *Gross* v. *Needham,* 184 Cal.App.2d 446, 456 [7 Cal.Rptr. 664].)

The court's express finding that the damages were only $14,300 amounts to an implied determination that no other damages were sustained by the cross-complainants. This inference is further borne out by the court's order for judgment in which it is stated that aside from the damages for the removal of the roof and the readjustment of the building the contentions of the cross-complainants are entirely devoid of merit. While a trial court's memorandum opinion cannot take the place of findings of fact, there is authority to the effect that on appeal the memorandum may be consulted in the absence of a specific finding of fact to ascertain what the court would have found. (*Macmillan Petroleum Corp.* v. *Griffin,* 116 Cal.App.2d 425, 427 [255 P.2d 75] ; *Rose* v. *Hunter,* 155 Cal.App.2d 319, 323 [317 P.2d 1027].)

If the court used the figures set out in the escrow instructions signed by the parties on July 23 and July 29, 1959, it noted that the motel was given a value of $105,000, the warehouse $20,000 and the boat, the ''Blue Moon,'' $19,300. If it subtracted the conceded amount of the liens existing on the motel property in Santa Clara County from the agreed value of the motel, it secured a result of $40,387.23 that the Sahlmans were paying according to the escrow instructions, and if it added the values of the boat and warehouse as set forth in the instructions, the Sahlmans were receiving $39,300, and the ''bad bargain'' claimed to have been made by the Sahlmans amounted only to the sum of $1,087.23. If the court was persuaded that the boat was actually worth approximately $30,500, as reported by the Sahlmans' expert, instead of the $19,300 noted in the escrow instructions, the Sahlmans were on that basis actually receiving more in value than they were giving in exchange.

The duty of this court begins and ends with the ascertain-

ment that the trial court's findings are supported by substantial evidence; we have nothing to do with deciding where the weight of the evidence lies or with the question of the veracity of witnesses; those are duties which the trial court must perform and with which we cannot interfere.

The judgment is affirmed.

Stone, J., concurred.

Brown, J., being disqualified, did not participate.

The petitions for a rehearing were denied June 11, 1962. Brown, J., being disqualified, did not participate therein. Appellants' petitions for a hearing by the Supreme Court were denied July 11, 1962.