[No. E012009. Fourth Dist., Div. Two. July 2, 1996.]

BISHOP CREEK LODGE et al., Plaintiffs and Appellants, v.
RONALD SCIRA et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

_____

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III, IV, VI, VII, VIII, IX, and X.

## COUNSEL

Rudder, Libersbach, Mohun & Carney, Paul S. Rudder, Gerald F. Mohun, Jr., and R. Mark Carney for Plaintiffs and Appellants.

Joseph Di Giulio, Lampi, Gephart & Silverman and Randall L. Gephart for Defendants and Appellants.

## OPINION

**RICHLI, J.**—This action is just one of many that have arisen out of a restrictive covenant recorded in 1953. The covenant purports to prohibit the use of the burdened property for cabin rentals, or for grocery, beer or gasoline sales. Presently, defendants Ronald and Donna Scira (the Sciras) own the property originally burdened by the covenant. Plaintiff Bishop Creek Lodge (Bishop Creek) owns one piece of the property originally benefited by the covenant; plaintiff the Emmett Rice Trust (the Trust) owns another piece. Mainly, however, as the trial court put it, the covenant has burdened and benefited the courts of Inyo County.

Bishop Creek purchased its property from defendants Charles and Joyce Hernandez (the Hernandezes). At the time, there was an action pending in which the Hernandezes were seeking to enforce the covenant against the Sciras; the Sciras had cross-complained for a declaration that the covenant was unenforceable, and had recorded a lis pendens against the Hernandezes' property. After the Hernandezes agreed to sell their property to Bishop Creek, and during escrow, the Hernandezes and the Sciras settled their lawsuit by stipulating to a judgment that the covenant was unenforceable.

Thus, according to Bishop Creek, it was cheated out of the benefit of the covenant.

Bishop Creek therefore filed this action, in which it asserted claims for breach of contract and fraud against the Hernandezes, and for conspiracy against the Sciras. At the same time, both the Trust and Bishop Creek sought an injunction to enforce the covenant against the Sciras. The Sciras cross-complained against the Hernandezes for indemnity. A jury awarded Bishop Creek compensatory and punitive damages against all defendants, but the trial court denied the requested injunction, and denied indemnity as against public policy.

This resolution satisfied no one; everyone has appealed. Defendants contend that:

1. The trial court erred by granting summary adjudication of issues in favor of Bishop Creek when it was no longer statutorily authorized to do so.

2. The covenant was not enforceable as either a covenant running with the land, or an equitable servitude.

3. The covenant was unenforceable as an unlawful restraint of trade (Bus. & Prof. Code, § 16600).

4. The covenant, even if once enforceable, had become unenforceable due to general disregard.

5. The trial court erroneously excluded evidence of the lis pendens.

6. The trial court erroneously excluded Bishop Creek's preliminary title report as a sanction for referring to the lis pendens in closing argument.

7. The trial court erred by instructing the jury that the stipulated judgment did not constitute notice to Bishop Creek.

8. The trial court erroneously refused to instruct on defendants' equitable defenses.

9. The trial court erroneously delayed in ruling on defendants' motion for a nonsuit against the Trust.

10. The trial court erroneously excluded evidence of the basis for attorney Frederic Schaefer's advice to the Hernandezes that they should settle their case against the Sciras.

11. The coconspirator exception to the hearsay rule did not authorize admission of statements by Scira as evidence against the Hernandezes.

12. The trial court erroneously refused to exclude the testimony of Fred Hulting, Bishop Creek's expert witness, despite his failure to produce documents.

13. The trial court erroneously failed to give a jury instruction on clear and convincing evidence.

14. The trial court erroneously failed to hold a trial on the Sciras' cross-complaint for indemnity.

15. The trial court should have precluded an award of punitive damages against the Sciras.

In addition, plaintiffs contend that:

16. The trial court erred by summarily adjudicating that the covenant did not run with the land.

17. Bishop Creek and/or the Trust were entitled to an injunction to enforce the covenant.

18. The trial court erred by requiring Bishop Creek to choose between damages for breach of contract and damages for fraud.

Alas, the covenant is due to burden the Inyo County courts still further: the trial court erred by excluding evidence of the lis pendens, and we must reverse on this ground. We do not find that the covenant was unenforceable as a matter of law, and we find no other basis for ordering entry of judgment in favor of defendants; we must remand. We will discuss the remaining issues only to the extent that doing so seems likely to provide useful guidance to the parties and the trial court on remand.

I

FACTUAL BACKGROUND

Austin and Dorothy Shreve owned a piece of property in rural Inyo County. In 1953, the Shreves conveyed one portion of that property to John and Louise Smith. The deed included a covenant that the portion of the property which the Shreves retained would not be used for purposes of a

"[g]rocery business, including the sale of beer, cabin rentals of any type, gasoline station, or fish pond," for the next 50 years.

The Shreves conveyed the property burdened by the covenant, eventually known as Habegger's Resort (the Resort), to Oliver and Vera Habegger. On July 30, 1956, the Smiths sued the Habeggers, alleging that they were violating the covenant by renting out cabins at the Resort. On December 18, 1956, by stipulation, a permanent injunction was issued enjoining the Habeggers from violating the covenant. In 1961, the Habeggers were found to have rented out trailers in violation of the injunction, and were held in contempt.

In 1980, the Habeggers conveyed the Resort to the Sciras. Habegger never told the Sciras about the injunction. He indicated that they could rent out trailers, and could open a grocery store. The Sciras' preliminary title report did not reflect the covenant or the injunction. Their final title report, however, showed both.

As a result, in 1981, the Sciras filed an action against the Habeggers and against the title insurance company (Scira v. Habegger (Super. Ct. Inyo Co., 1981, No. 13177)). In 1984, the Habeggers were found liable to the Sciras for fraud; the title insurance company was found not liable.

Meanwhile, the Smiths had conveyed one portion of the property benefited by the covenant to the McDermotts, retaining the remainder. In 1982, the McDermotts conveyed this portion, eventually known as Bishop Creek Lodge (the Lodge), to the Hernandezes.

The Hernandezes believed—partly because of the Sciras' legal victory over the Habeggers—that the covenant was enforceable. On August 30, 1984, the Hernandezes filed an action against the Sciras (Hernandez v. Scira (Super. Ct. Inyo Co., 1984, No. 14522)), alleging that they were violating the covenant by renting trailers and operating a grocery store. On September 21, 1984, the Sciras cross-complained against the Hernandezes, alleging that the covenant was unenforceable, and seeking a declaratory judgment. In connection with their cross-complaint, the Sciras recorded a lis pendens against the Lodge. The Hernandezes moved for a temporary restraining order, but on October 1, 1984, it was denied.

By about September 1985, the Hernandezes had become dissatisfied with their attorney; they asked Attorney Frederic Schaefer to take over Hernandez v. Scira. He refused to do so; he explained that previously he had represented the title company in Scira v. Habegger, and, as a result, he had

come to the conclusion that the covenant was unenforceable. He advised them to settle or dismiss Hernandez v. Scira, and warned that if they did not, they could face severe repercussions, including liability for malicious prosecution. According to the Hernandezes, the denial of the preliminary injunction and Schaefer's stern advice led them to believe the covenant was unenforceable.

Earlier, around 1983, one Gary Olson (Olson) had talked to the Hernandezes about purchasing the Lodge. At that time, Hernandez told Olson the Lodge had the exclusive right in the area to rent cabins and to sell beer and gasoline. In late 1985, Olson again talked to the Hernandezes about purchasing the Lodge. This time, the covenant and the Lodge's exclusive rights did not come up. Olson and his wife (the Olsons) reached agreement with the Hernandezes, and they opened escrow on the Lodge.

On or after November 19, 1985, Olson received a preliminary title report. It reflected the 1953 Shreve deed; Olson obtained a copy of the Shreve deed, and satisfied himself that the covenant benefited the Lodge. The preliminary title report, however, also reflected the Sciras' lis pendens. Olson demanded that the lis pendens and other items be cleared from the title.

Meanwhile, Hernandez contacted Scira in hopes of settling their lawsuit. The evidence was in conflict on whether he did so before or after he had begun discussing a sale of the Lodge to the Olsons. They agreed to a settlement on the following terms: the Sciras paid the Hernandezes $17,500, and executed a withdrawal of their lis pendens. In return, the parties stipulated to entry of a judgment finding in favor of the Sciras and declaring the covenant unenforceable.

On November 26, 1985, the stipulated judgment was recorded. The judgment stated that the covenant affected the Resort, and gave the Resort's legal description; however, it did not refer to the Lodge. Accordingly, the judgment was in the chain of title of the Resort, but not the Lodge. Immediately afterward, the release of lis pendens was also recorded. The release, unlike the judgment, *did* give the legal description of the Lodge. Accordingly, it was effective to clear title and to permit the escrow to close.

Neither the Hernandezes nor the Sciras ever told the Olsons about their agreement to abrogate the covenant. The Hernandezes explained that they believed the covenant was unenforceable, and therefore not material to the purchase and sale of the Lodge.

On December 30, 1985, escrow on the Lodge duly closed. The Olsons took title in the name of Bishop Creek, their closely held corporation. In

1986, Scira began selling groceries, beer and wine. When Olson protested, Scira claimed he had purchased the right to do so from Hernandez.

On April 2, 1986, the Smiths, who had retained a portion of the property benefited by the covenant, sold their portion to Emmett Rice (Rice). Later, Rice conveyed this property (the Rice Property) to the Trust.

A chart listing the most significant of these events in chronological order is attached as exhibit A.

II

PROCEDURAL BACKGROUND

On February 23, 1987, Bishop Creek and Rice filed this action against the Hernandezes and the Sciras. The complaint purported to state causes of action for breach of contract, fraud, conspiracy, and injunctive and declaratory relief.[1] On April 16, 1987, the Sciras filed a cross-complaint against the Hernandezes for indemnity.

On September 27, 1990, the Hernandezes filed a motion for summary judgment and/or summary adjudication of issues. On October 1, 1990, the Sciras filed a separate motion for summary judgment and/or summary adjudication of issues; they also joined in the Hernandezes' motion. On April 3, 1991, the trial court denied both motions for summary judgment; however, it summarily adjudicated several issues, including that the covenant did not run with the land, although the court found triable issues with respect to whether the covenant was an enforceable equitable servitude.

On November 4, 1991, plaintiffs filed their own motion for summary judgment and/or summary adjudication of issues. On December 10, 1991, the trial court denied plaintiffs' motion for summary judgment, but summarily adjudicated several additional issues, including that: (1) the covenant was an enforceable equitable servitude, (2) the covenant was not void under Business and Professions Code section 16600, and (3) Bishop Creek was not on notice of Hernandez v. Scira.

On January 6, 1992, the case was called for jury trial. By stipulation of the parties, the trial court bifurcated the issue of punitive damages. During trial,

---

[1]The complaint also included causes of action for breach of the implied covenant of good faith and fair dealing and negligent misrepresentation, but plaintiffs dismissed these before trial.

it also bifurcated (perhaps we should say trifurcated) the Sciras' cross-complaint for indemnity.

After the jury retired to deliberate, defendants moved for a nonsuit or a directed verdict as against Rice, because he had died. In response, plaintiffs moved to substitute the Trust. The trial court granted plaintiffs' motion for substitution (and thus denied defendants' motion for nonsuit).[2]

On January 17, 1992, the jury returned special verdicts. On the breach of contract cause of action, it awarded Bishop Creek $107,500 against the Hernandezes. On the fraud cause of action, it found that the Hernandezes had fraudulently concealed or suppressed a material fact, and awarded Bishop Creek $115,000 against the Hernandezes. On the conspiracy cause of action, it found that the Hernandezes and the Sciras had "agree[d] not to inform the Olsons of the sale of the covenant," and had done so "with the intent to fraudulently harm the [p]laintiffs"; the special verdict form did not provide for, and hence the jury did not make, any award of damages in connection with this finding.

On January 23, 1992, the Sciras moved to dismiss the claim for punitive damages against them, but the trial court deferred ruling. The issue of punitive damages was tried; the jury awarded Bishop Creek $40,000 in punitive damages against the Hernandezes, and $60,000 in punitive damages against the Sciras. The Sciras then moved for a nonsuit against Rice and/or the Trust. Again, the trial court deferred ruling; it ordered the parties to submit briefs on the Sciras' pending motions, as well as on other issues affecting the terms of the judgment.

On May 19, 1992, the trial court ruled that: (1) the Sciras were liable for punitive damages; (2) Bishop Creek had to choose between the award of contract damages and the award of fraud damages (including punitive damages) against the Hernandezes; (3) the jury's award of damages precluded issuance of an injunction to enforce the covenant; and (4) defendants were entitled to a nonsuit against the Trust. The trial court directed Bishop Creek to prepare a proposed judgment.

Bishop Creek submitted a proposed judgment in which, not surprisingly, it chose fraud damages against the Hernandezes. Defendants filed written objections to the proposed judgment. In response to their objections, the trial

---

[2]The court made its ruling conditional on a showing that the Trust had succeeded to Rice's ownership interest in the property. Plaintiffs eventually submitted a certified copy of a 1988 deed from Rice to the Trust. The trial court ruled this showing sufficient; defendants have not challenged that ruling in this appeal.

court ruled further that: (1) by awarding damages, the jury had implicitly denied an injunction; (2) the Sciras' cross-complaint against the Hernandezes for indemnity should be denied as against public policy. It directed Bishop Creek to prepare a new proposed judgment. On September 15, 1992, the trial court entered judgment. On October 8 and 9, 1992, respectively, the Sciras and the Hernandezes filed notices of intent to move for new trial. On November 9, 1992, the trial court denied the motions for new trial. On December 7, 1992, defendants filed notices of appeal from the judgment and from the order denying their motions for new trial. On December 17, 1992, plaintiffs filed a notice of cross-appeal from the judgment.

## III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V

### THE EFFECT OF THE WITHDRAWAL OF THE LIS PENDENS IN HERNANDEZ V. SCIRA

Defendants contend that the trial court erred by: (1) excluding evidence of the lis pendens; (2) ordering the preliminary title report withdrawn from evidence as a sanction for mentioning the lis pendens in closing argument; and (3) instructing that the recorded judgment did not put Bishop Creek on notice.

Early on, defendants moved for summary judgment and/or summary adjudication on the ground that, among other things, recordation of the lis pendens and the stipulated judgment in Hernandez v. Scira placed Bishop Creek on notice of the judgment, rendering the covenant unenforceable. The trial court denied the motion on this issue.

Bishop Creek then moved for summary adjudication that, among other things, it was *not* on notice. The trial court agreed. It summarily adjudicated that "Plaintiffs [*sic*] did not, prior to the sale of their property, have notice of the pending litigation between the Sciras and the Hernandezes." It based its ruling on Code of Civil Procedure section 409.55[7] (section 409.55) and

---

*See footnote, *ante*, page 1721.

[7]Former section 409.55 of the Code of Civil Procedure provided, in pertinent part: "At any time after notice of pendency of an action has been recorded . . . , the notice may be withdrawn by recording in the office of the county recorder in which the notice of the

section 409.8[8] (section 409.8), then in effect. Next, plaintiffs moved *in limine* to exclude all evidence of the lis pendens. The trial court granted the motion, again based on sections 409.55 and 409.8.

Later in the trial, while Olson was on the stand, the Hernandezes introduced, as exhibit A, the preliminary title report Olson had received during escrow. Plaintiffs stipulated that it was admissible, and the trial court duly admitted it. However, when counsel for the Hernandezes was about to question Olson concerning exception No. 12 on the preliminary title report—i.e., the lis pendens—plaintiffs objected. The trial court again ruled that the parties were not to refer to the lis pendens, and it specifically ordered Olson not to mention the lis pendens in his testimony.

Later, the trial court changed its mind and permitted some testimony about the lis pendens. Defendants were allowed to testify that the Sciras in fact recorded the lis pendens. The Sciras were also allowed to testify that they made no disclosure to the Olsons because they knew the lis pendens would show up on the Olsons' title report. However, Scira admitted knowing that withdrawal of the lis pendens meant it would no longer show up on the title report. Finally, both the lis pendens itself and the withdrawal of the lis pendens were admitted into evidence.

During closing arguments, counsel for the Sciras noted that Olson had wanted all the exceptions on the preliminary title report removed: "He

pendency of the action was recorded a notice of withdrawal executed by the party who recorded the notice of pendency of the action . . . ."

"Upon recordation of the notice of withdrawal in the manner provided by this section, neither the notice of the pendency of the action nor any information derived therefrom, prior to the recording of a certified copy of the judgment or decree issued therein, shall constitute constructive or actual notice of any of the matters contained therein, or any of the matters relating to such action, or create any duty of inquiry in any person thereafter dealing with the property described therein." (Stats. 1982, ch. 560, § 1, p. 2506 repealed eff. Jan. 1, 1993, Stats. 1992, ch. 883, § 1; see now Code Civ. Proc., §§ 405.50, 405.60.)

[8]Former section 409.8 of the Code of Civil Procedure provided, in pertinent part: "Upon the withdrawal of a notice of pendency of an action . . . or upon recordation of a certified copy of an order expunging a notice of pendency of action pursuant to Section 409.1 or 409.2, no person, except a person who is a nonfictitious party to the action at the time of the recording of the withdrawal or order of expungement, who thereafter becomes, by conveyance recorded prior to the recording of a certified copy of the judgment or decree issued therein, a purchaser, transferee, mortgagee, or other encumbrancer for a valuable consideration of any interest in the real property subject to the action shall be deemed to have actual knowledge of the action or any matter claimed, alleged, or contended therein, irrespective of whether such person actually possessed actual knowledge of the action or matter and irrespective of when or how such knowledge was obtained. It is the intention of the Legislature that this section shall provide for the absolute and complete free transferability of real property after the expungement or withdrawal of a notice of pendency of action." (Stats. 1982, ch. 560, § 2, pp. 2506-2507, repealed eff. Jan. 1, 1993, Stats. 1992, ch. 883, § 1; see now Code Civ. Proc., § 405.61.)

wanted the judgments removed, he wanted the IRS liens removed. [¶] . . . *He wanted the lis pendens removed,* he wanted all of that removed." (Italics added.) Plaintiffs moved for a mistrial and for sanctions based on this mention of the lis pendens. The trial court denied the motion; however, it ordered the preliminary title report withdrawn from evidence, apparently as a sanction.

At plaintiffs' request, and over defendants' objection, the trial court instructed the jury: "This court has decided that the recordation of the judgment entered in Hernandez v. Scira . . . was not, as a matter of law, notice to the plaintiff herein of the judgment of unenforceability."

Plaintiffs argued, and the trial court essentially agreed, that under former sections 409.55 and 409.8, once the lis pendens was withdrawn, it was irrelevant to show that Bishop Creek had actual or constructive notice of the underlying action or any matter related to it. Also, although the trial court never quite put it this way, it evidently concluded that the lis pendens was likely to mislead the jury into thinking Bishop Creek did have actual or constructive knowledge, and hence, even if the lis pendens was relevant to some other issue in the action, evidence of it was more prejudicial than probative under Evidence Code section 352.

If this were an action concerning priority under the recording statutes, we would find no fault with the trial court's ruling.[9] However, we do not believe sections 409.55 and 409.8 apply in a fraud action.

■ The purpose of a lis pendens is to give constructive notice of an action affecting real property to persons who subsequently acquire an interest in that property, so that the judgment in the action will be binding on such persons even if they acquire their interest before the judgment is actually rendered. (*Arrow Sand & Gravel, Inc.* v. *Superior Court* (1985) 38 Cal.3d 884, 888 [215 Cal.Rptr. 288, 700 P.2d 1290].) The lis pendens operates in accordance with classic principles of priority: a duly recorded instrument constitutes constructive notice, and a purchaser is subject to prior interests of which he or she has actual or constructive notice. (See Civ.

---

[9]Defendants contend that even if section 409.8 otherwise applied, Bishop Creek did not come within its terms because Bishop Creek did not purchase the Lodge prior to recordation of the judgment. However, given the purposes of section 409.8, it is at least arguable that when it refers to one who purchases "prior to recording of a certified copy of the judgment or decree," it requires recording *in the purchaser's chain of title.* That way, the judgment itself affords notice of the action to anyone who purchases thereafter. If so, then the judgment here was never "recorded" within the meaning of section 409.8. Because we decide this issue on broader grounds, we need not resolve this question.

Code, § 1214, 1217; see also former Code Civ. Proc., § 409, repealed eff. Jan. 1, 1993, Stats. 1992, ch. 883, § 1; see now Code Civ. Proc., § 405.24.)

■ Notice, however, as such, is irrelevant in a fraud action. Under a long line of cases, the fact that the victim had constructive notice of the truth from public records is no defense to fraud. The existence of such public records may be relevant to whether the victim's reliance was justifiable, but it is not, by itself, conclusive. (*Seeger* v. *Odell* (1941) 18 Cal.2d 409, 414-417 [115 P.2d 977, 136 A.L.R. 1291]; *Grange Co.* v. *Simmons* (1962) 203 Cal.App.2d 567, 576-577 [21 Cal.Rptr. 757]; *Gross* v. *Needham* (1960) 184 Cal.App.2d 446, 460 [7 Cal.Rptr. 664]; *Sullivan* v. *Dunnigan* (1959) 171 Cal.App.2d 662, 668 [341 P.2d 404]; *Regus* v. *Schartkoff* (1957) 156 Cal.App.2d 382, 389 [319 P.2d 721]; *Schaefer* v. *Berinstein* (1956) 140 Cal.App.2d 278, 296 [295 P.2d 113]; *Mills* v. *Hellinger* (1950) 100 Cal.App.2d 482, 487 [224 P.2d 34]; *Barder* v. *McClung* (1949) 93 Cal.App.2d 692, 697 [209 P.2d 808]; *Stoll* v. *Selander* (1947) 81 Cal.App.2d 286, 292 [183 P.2d 935]; *Anderson* v. *Thacher* (1946) 76 Cal.App.2d 50, 70 [172 P.2d 533].) It follows that the statutory provision that an expunged or withdrawn lis pendens does not constitute actual or constructive notice of the underlying action is likewise irrelevant in a fraud action.

Of course, two distinct statutes are involved here. Upon withdrawal of a lis pendens, section 409.55 provides that the lis pendens no longer affords "constructive or actual notice." This statute is obviously irrelevant in a fraud action. Section 409.8, however, goes farther; it provides that a nonparty purchaser will not be deemed to have "actual knowledge." We sympathize with the trial judge who, faced with this language, felt compelled to apply section 409.8 to the "actual knowledge" of a plaintiff claiming fraud. When section 409.8 is construed in light of its stated purpose, however, it does not reach so far.

■ The Legislature declared that section 409.8 was intended to "provide for the absolute and complete free transferability of real property after the expungement or withdrawal of a notice of pendency of action." Expungement means that either a court has determined preliminarily that the plaintiff's asserted interest does not qualify for protection by a lis pendens (former Code Civ. Proc., § 409.1, Stats. 1968, ch. 815, § 1, p. 1572, repealed eff. Jan. 1, 1993, Stats. 1992, ch. 883, § 1; see now Code Civ. Proc., §§ 405.31, 405.32), or the defendant has given an undertaking sufficient to protect the plaintiff's asserted interest. (Former Code Civ. Proc., § 409.2, Stats. 1968, ch. 815, § 2, p. 1572, repealed eff. Jan. 1, 1993, Stats. 1992, ch. 883, § 1; see now Code Civ. Proc., §§ 405.33, 405.34.) Withdrawal means

the plaintiff has voluntarily chosen not to assert his or her interest against subsequent purchasers. Under these circumstances, permitting the purchaser to take free of the plaintiff's asserted interest, regardless of his or her actual knowledge, is not manifestly unfair, and promotes the free transferability of property. Accordingly, under sections 409.55 and 409.8, expungement or withdrawal of a lis pendens conclusively insulates a purchaser prior to judgment from the claims of the plaintiff in the underlying action. (*Knapp Development & Design* v. *Pal-Mal Properties, Ltd.* (1987) 195 Cal.App.3d 786, 790-791 [240 Cal.Rptr. 920].)

But none of this is remotely relevant to a fraud action. If sections 409.55 and 409.8 applied in a fraud action, the plaintiff could purchase property after a lis pendens had been expunged or withdrawn and claim fraudulent misrepresentation or fraudulent nondisclosure of matters as to which he or she had actual knowledge. The defendant's evidence that the plaintiff had actual knowledge could be excluded as legally irrelevant. This *is* manifestly unfair, and would in no way foster the purpose of section 409.8.

At oral argument, Bishop Creek claimed our opinion creates a "duty of inquiry," despite the withdrawal of the lis pendens, in violation of the express language of section 409.55. Admittedly, in some cases, a fraud plaintiff's unreasonable failure to inquire into the truth may bar recovery. Nevertheless, a fraud plaintiff does not have the "duty of inquiry" that a purchaser of real property does. The fraud plaintiff need only demonstrate justifiable reliance; this is a different, and far lower, standard. Thus, as we discussed above, a land purchaser who fails in his or her "duty of inquiry" takes subject to prior interests such inquiry would have revealed; nevertheless, he or she may be able to recover for the seller's fraudulent misrepresentations regarding those interests.

According to Bishop Creek, sections 409.55 and 409.8 operate as both a shield and a sword. Once a lis pendens has been withdrawn, a purchaser's title is protected against matters which inquiry concerning the underlying action would have revealed; Bishop Creek would argue that the purchaser is also enabled to recover damages for fraudulent concealment of such matters, despite willful ignorance—or worse, actual knowledge of them. We disagree; we believe the Legislature intended to protect purchasers, but not to give them, as a bonus, a fraud cause of action that would not otherwise exist.

We find some support for our conclusion in *GHK Associates* v. *Mayer Group, Inc.* (1990) 224 Cal.App.3d 856 [274 Cal.Rptr. 168]. There plaintiff

GHK transferred certain property to defendant MDC; MDC was to develop the property, and GHK was to receive a share of the resulting profits. (*Id.*, at pp. 862, 865-866.) GHK was given the right to approve any further transfers of the property. (*Id.*, at pp. 866-867.) Thereafter, without GHK's consent, the property was transferred to several other entities, and there were other breaches of the development agreement. (*Id.*, at pp. 862-863, 867-868.) GHK filed suit, and filed and recorded a lis pendens on the property, but the lis pendens was expunged because GHK failed to post a $2 million bond required by the trial court. (*Id.*, at pp. 868-869.) Thereafter, the property was transferred to defendant PBL. (*Id.*, at p. 869.) GHK amended its complaint to add PBL as a defendant. (*Id.*, at p. 870.) Eventually, the trial court imposed a constructive trust on proceeds of the property. (*Ibid.*)

On appeal, PBL challenged the constructive trust, apparently arguing that expungement of the lis pendens meant it must be conclusively deemed to have lacked knowledge of GHK's asserted rights. The court disagreed, in part because PBL had eventually become a party to the action in which the judgment was rendered. (224 Cal.App.3d at p. 879.) However, it also held that: "Although the expungement of a lis pendens wipes out *constructive notice* of a lawsuit under California Code of Civil Procedure section 409.8, the expungement does not insulate from a *damages award* (based on lost profits) a subsequent purchaser of the Property—PBL—which, with actual knowledge of GHK's contractual rights, purchased the Property and conspired to develop the Project in derogation of GHK's rights under the agreements." (*Ibid.*) The court thus essentially refused to apply section 409.8 in an action to impose a constructive trust.

We therefore conclude that the trial court erred in excluding evidence of the lis pendens. Moreover, we conclude that the error was not harmless. Defendants were prepared to prove that the lis pendens gave Olson actual knowledge that Hernandez v. Scira might affect title to the Lodge; he demanded that the lis pendens be cleared from the title, and it was. In light of the other evidence in the record, a jury could reasonably conclude that Olson should have made a further inquiry or investigation into precisely how the lis pendens was cleared, and he was not justified in relying on the Hernandezes' failure to disclose. Moreover, a jury could reasonably conclude that defendants settled Hernandez v. Scira in the belief that they were complying with Olson's demand for clear title, rather than with intent to defraud.

Defendants did lead the trial court down the garden path somewhat, by moving for summary judgment on the theory that Bishop Creek had constructive notice that the covenant was unenforceable. This fact, even if

undisputed, was completely irrelevant. However, plaintiffs did not oppose defendants' motion on this ground; instead, they argued that they did *not* have constructive notice, by virtue of section 409.55. Plaintiffs then made the problem worse by moving for summary adjudication that Bishop Creek had no notice, relying on sections 409.55 and 409.8. Thereafter, defendants argued, persistently but fruitlessly, that sections 409.55 and 409.8 did not apply in a fraud action. Although defendants' strategy, in hindsight, was ill-conceived, we cannot say it invited the error.

Exclusion of evidence of the lis pendens was erroneous and requires reversal. Our reasoning may suggest what our views might be on whether the trial court also erred in excluding the preliminary title report as a sanction for mentioning the lis pendens, or in instructing that the recorded judgment did not give notice to Bishop Creek; however, in light of our holding, we need not actually address these contentions.

## VI-X*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## XI

### DISPOSITION

The judgment is reversed. Defendants may recover their costs on appeal from plaintiffs.

Ramirez, P. J., and Hollenhorst, J., concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied October 16, 1996.

---

*See footnote, *ante,* page 1721.

APPENDIX

EXHIBIT A

| Date | The Resort | The Lodge | The Rice Property |
|---|---|---|---|
| 1953 | The Shreves convey a parcel which includes the Lodge and the Rice Property to the Smiths; in the deed, the Shreves covenant that the Resort will not be used for a grocery business, cabin rentals, gas station or fish pond | | |
| ? | The Shreves convey the Resort to the Habeggers | | |
| 7/30/56 | The Smiths sue the Habeggers, alleging violation of the covenant | | |
| 12/18/56 | A permanent injunction is issued by stipulation, enforcing the covenant against the Habeggers | | |
| ? | | The Smiths convey the Lodge to the McDermotts | |
| 9/26/80 | The Habeggers convey the Resort to the Sciras | | |
| 7/24/81 | The Sciras sue the Habeggers and the title insurance company | | |
| 3/15/82 | | The McDermotts convey the Lodge to the Hernandezes | |
| Late '83 | | Olson first talks to Hernandez about purchasing the Lodge | |
| 1984 | The Habeggers are found liable to the Sciras for fraud; the title insurance company is found not liable | | |
| 8/30/84 | The Hernandezes sue the Sciras for violating the covenant | | |

| Date | The Resort | The Lodge | The Rice Property |
|---|---|---|---|
| 9/21/84 | The Sciras cross-complain against the Hernandezes for a declaration that the covenant is unenforceable | | |
| 10/22/84 | | The Sciras record a lis pendens against the Lodge | |
| Late '85 | . | Olson again talks to Hernandez about purchasing the Lodge | |
| 11/11/85 | | The Hernandezes open escrow to sell the Lodge to the Olsons | |
| 11/19/85 | | Preliminary title report reflects the lis pendens; later, Olson receives and reads copies of all covenants shown on the preliminary title report | |
| 11/26/85 | The Sciras and the Hernandezes settle; the Sciras pay the Hernandezes $17,500; stipulated judgment that the covenant is unenforceable is recorded, but describes only the Resort; withdrawal of lis pendens is recorded as to the Lodge | | |
| 12/30/85 | | Escrow on the Lodge closes | |
| 4/2/86 | | | The Smiths convey the Rice Property to Rice |
| 2/23/87 | Bishop Creek and Rice bring this action against the Hernandezes and the Sciras | | |