Filed 7/15/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DEVINDER S. SHOKER et al.,<br><br>    Petitioners,<br><br>v.<br><br>SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>    Respondent;<br><br>JASBIR S. PHANGUREH,<br><br>    Real Party in Interest. | A163711<br><br>(Alameda County<br>Super. Ct. No. RG19036992) |

In this writ proceeding, Devinder S. Shoker and Rajwant K. Shoker (the Shokers) seek relief from the trial court's order expunging their notices of lis pendens. We grant writ relief because the trial court erred in concluding that the Shokers' constructive trust claim is not a " '[r]eal property claim' " under Code of Civil Procedure section 405.4.[1]

**BACKGROUND**

**A.**

A lis pendens—also called a notice of pendency of action—is a document filed with a county recorder that provides constructive notice of a pending lawsuit affecting the real property described in the notice. (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647 (*Kirkeby*); *Bishop Creek Lodge v. Scira*

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

(1996) 46 Cal.App.4th 1721, 1733.) Any party may record a lis pendens when the lawsuit involves a "real property claim." (§ 405.20; *Kirkeby, supra,* at p. 647.) Section 405.4 defines a " '[r]eal property claim' " to mean "the cause or causes of action in a pleading which would, if meritorious, *affect . . . title to, or the right to possession of, specific real property*." (Italics added.) A lis pendens gives notice that the judgment will be binding on persons later acquiring an interest in that property. (*Bishop Creek Lodge, supra,* at p. 1733.)

## B.

In their complaint, the Shokers allege that defendant Sukhjinder Singh Ghuman lured them into investing $1.5 million in an unidentified technology company. Ghuman did so by befriending the Shokers, becoming familiar with the real properties they owned (and rented for income), and then promising the Shokers returns far exceeding those that they were receiving on their rental properties. Ghuman told the Shokers that time was of the essence and that, to take advantage of this investment opportunity, they needed to immediately advance substantial funds to him. He advised the Shokers to immediately invest any liquid assets and to also sell their rental properties so that they could invest the proceeds from those sales.

Relying on his advice and representations, the Shokers first provided Ghuman with $1.5 million and then sold 10 of their rental properties to a purported cash buyer identified by Ghuman—Jasbir S. Phangureh. Ghuman handled the real estate negotiations and transactions, acting as the Shokers' agent. Based on his representation that they would split returns 50/50, the Shokers also authorized Ghuman to act as their agent in all communications with the unidentified technology company and to hold the Shokers' investment on their behalf.

At Ghuman's direction, 10 of the Shokers' rental properties, which are specifically identified in their complaint, were sold in

stages. A few days separated each sale. After the sale of each property closed, the Shokers followed Ghuman's instructions and paid him the proceeds for investment in the technology company.

Ghuman promised that he was investing the Shokers' money, which totaled over $6 million after the real property sales were complete, in the technology company. In reality, however, Ghuman was not investing on the Shokers' behalf in any technology company. Instead, Ghuman conspired with Phangureh to transfer the Shokers' own money to Phangureh so that they could obtain the Shokers' 10 rental properties without paying for them. Several years later, after Ghuman claimed the technology investment had not been successful and told the Shokers that their former rental properties were producing rental income of over $350,000 per year, the Shokers started to doubt Ghuman's honesty. Ghuman offered to sell 50 to 60 percent of the properties back to them for approximately $5 million.

The Shokers pled eight causes of action against Ghuman, Phangureh, or both: (1) breach of fiduciary duty; (2) aiding and abetting the breach of fiduciary duty; (3) intentional misrepresentation; (4) concealment; (5) conspiracy; (6) acting as a real estate broker without a license; (7) unjust enrichment ; and (8) constructive trust.

In their prayer, the Shokers seek damages, "an order declaring that [Ghuman and Phangureh] hold the [Shokers' rental properties] in trust for [the Shokers]," and an order compelling Ghuman and Phangureh to convey the properties back to the Shokers.

## C.

Almost two years after they filed their complaint, the Shokers recorded a notice of lis pendens for each of the 10 rental properties. Phangureh moved to expunge the lis pendens, arguing that the Shokers did not assert a "real property claim" (§

3

405.31) and that, even if they alleged such a claim, they could not prove the claim's probable validity. (§ 405.32.)

The trial court granted the motion, accepting Phangureh's first argument. Although the trial court recognized the Shokers may be entitled to an interest in the properties if they win on the merits, the court concluded that none of the four causes of action asserted against Phangureh were "real property claims." The trial court also awarded Phangureh $2,760 in attorney's fees and costs, pursuant to section 405.38.

## D.

The Shokers filed a petition for writ of mandate (§ 405.39), which automatically stayed the effectiveness of the trial court's expungement order. (§ 405.35). Because writ review is the exclusive method for reviewing an order expunging a lis pendens (§ 405.39; *Howard S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 318) and the Shokers' petition suggests a need to clarify this complicated area of the law, we issued an order to show cause. Phangureh filed a return to the order to show cause and the Shokers filed a reply.

## DISCUSSION

## A.

The Shokers argue that the trial court erred by concluding that their constructive trust claim—which seeks reconveyance of the Shokers' 10 rental properties—is not a real property claim. We agree.

## 1.

A court shall order a notice of lis pendens expunged if it determines (1) that the pleading on which the notice is based does not contain a real property claim (§ 405.31); (2) that the claimant has not established, by a preponderance of the evidence, the probable validity of a real property claim (§ 405.32); or (3)

4

that adequate relief can be secured by an undertaking. (§ 405.33.) Although Phangureh raised both of the first two grounds for expungement in his motion, the trial court addressed only the first.

Unlike most motions, the party opposing a motion to expunge bears the burden to show the existence of a real property claim. (§ 405.30; *Kirkeby, supra,* 33 Cal.4th at p. 647.) In considering whether the burden has been met, the court engages in "a demurrer-like analysis." (*Kirkeby, supra*, at pp. 647-648.) The trial court and the reviewing court both review the complaint to determine if a real property claim has been properly pled. (*Ibid.*)

**2.**

Here, the operative question is whether the Shokers' claim for constructive trust is a real property claim (§ 405.31)—that is, a cause of action that "would, if meritorious, affect . . . title to, or the right to possession of, specific real property." (§ 405.4.)

Some actions present easy questions under the statute. A buyer's suit seeking specific performance of a real property purchase and sale agreement is obviously a real property claim. On the other hand, an action for money damages alone is not a real property claim—even if it involves real property in some way. (*BGJ Associates v. Superior Court* (1999) 75 Cal.App.4th 952, 967-968 (*BGJ Associates*).) Despite the statute's straightforward language, it has never been entirely clear if a claim that seeks to impose a constructive trust on real property affects title to or possession of real property.

A constructive trust is an equitable remedy that compels a wrongdoer—one who has property or proceeds to which he is not justly entitled—to transfer same to its rightful owner. (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1485; *GHK Associates v. Mayer Group, Inc.* (1990) 224

5

Cal.App.3d 856, 879.) These cases prove difficult (in part) because a constructive trust may be an appropriate remedy in a wide variety of circumstances. (See *BGJ Associates, supra,* 75 Cal.App.4th at p. 967 ["cause of action is not based on the establishment of a trust, but consists of the *fraud, breach of fiduciary duty*, or other act *that entitles the plaintiff to some relief*"], italics added.)

Two early cases (both from the Fourth Appellate District) held that an action supports a lis pendens if the plaintiff seeks a constructive trust or an equitable lien on specific real property. (*Okuda v. Superior Court* (1983) 144 Cal.App.3d 135, 141; *Coppinger v. Superior Court* (1982) 134 Cal.App.3d 883, 886, 890–891.) The plaintiffs in both *Okuda* and *Coppinger* sought to impose constructive trusts against real properties that they had not previously owned and to which they did not claim title other than as a means to recover money wrongfully taken. (*Okuda, supra,* at pp. 138-141 [buyer of house who never obtained title and surrendered possession sought equitable lien against house to recover value of improvements]; *Coppinger, supra,* at pp. 885-886, 891-892 [buyer of termite infested home sought constructive trust against sellers' new property in order to recover proceeds from sale].)

Many courts have since limited or rejected *Coppinger* and *Okuda*, concluding that a plaintiff's request for a constructive trust should *not* be considered a real property claim, within the meaning of section 405.4, when the trust is sought only to secure payment of a debt. (See *Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1862, 1865; *La Paglia v. Superior Court* (1989) 215 Cal.App.3d 1322, 1326–1329; *Urez Corp. v. Superior Court* (1987) 190 Cal.App.3d 1141, 1145–1149 (*Urez*); *Deane v. Superior Court* (1985) 164 Cal.App.3d 292, 296–297; *Burger v. Superior Court* (1984) 151 Cal.App.3d 1013, 1018–1019.) We read this later line of cases (which we refer to as the *Urez* line) as holding

6

that "allegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act *only* as a collateral means to collect money damages." (*Urez, supra,* at p. 1149, italics added.)

One particular case from the *Urez* line of cases—*BGJ Associates, supra,* 75 Cal.App.4th 952—is worth discussing in detail because it extends that reasoning one step further and supports the trial court's decision in this case.

In *BGJ Associates, supra,* 75 Cal.App.4th at pp. 967-970, a group of partners formed a joint venture to buy real property. Plaintiff partners sued other partners (and a third party) when the defendant partners usurped for themselves the partnership's opportunity to purchase one particular property. (*Id.* at p. 955.) The *BGJ Associates* court assumed the plaintiffs would be entitled, if their suit was meritorious, to a constructive trust remedy that would require the defendants to convey title to the plaintiffs. Accordingly, the constructive trust claim appeared to meet the statutory definition of a real property claim: a cause of action that "would, if meritorious, affect . . . title to, or the right to possession of, specific real property." (§ 405.4.) The court also recognized that plaintiffs, by seeking to be awarded title to specified real property, presented different circumstances from those at issue in the other *Urez* cases. Unlike those cases, plaintiffs were not seeking a constructive trust remedy *solely* as collateral for money damages. (*BGJ Associates, supra,* at pp. 968, 970-971.)

Nonetheless, citing cases in the *Urez* line, the court rejected a literal interpretation of the statute. (*BGJ Associates*, *supra*, 75 Cal.App.4th at p. 970.) A narrower approach was necessary, it reasoned, to avoid the potential for abuse of a lis pendens, which places a cloud on the property's title and would give unscrupulous attorneys undue leverage. (*Id.* at pp. 969-972.) The court therefore looked past the plaintiffs' real property claim to the

7

broader "substance" of the dispute.  (*Ibid.*)  Because plaintiffs' complaint also contained nine causes of action (out of a total of 11) that sought compensatory and punitive damages on fraud and tort theories, the court concluded that the case was essentially a fraud action seeking money damages, to which constructive trust allegations were merely appended.  (*Id.* at pp. 971-972.)

The court rejected plaintiffs' analogy to specific performance claims, reasoning that the cases plaintiffs cited were distinguishable because they involved actions solely for specific performance.  (*BGJ Associates, supra,* 75 Cal.App.4th at p. 971.)  The court concluded that plaintiffs who combine a real property claim with claims seeking money damages are not entitled to maintain a lis pendens on real property pending trial.  (*Id.* at pp. 971-972.)  "The danger is too great that a lis pendens, which effectively renders the property unmarketable, will have . . . coercive effects."  (*Id.* at p. 972.)

**3.**

We agree with the Shokers that the *BGJ Associates* court's approach has since been discredited.

Even before *BGJ Associates* was decided, the Legislature revised the statutory scheme, in 1992, to curb potential abuse.  (Stats. 1992, ch. 883, § 2; *Hunting World, Inc. v. Superior Court* (1994) 22 Cal.App.4th 67, 70, 73 (*Hunting World*).)  It added section 405.32, which requires a court to expunge a lis pendens if a plaintiff is unable to establish the "probable validity" of her real property claim by a preponderance of the evidence.  (§ 405.32; *Howard S. Wright Construction Co. v. Superior Court, supra,* 106 Cal.App.4th at pp. 317-318.)  Section 405.32 replaced an earlier provision which only required the recording party to show the action was filed for a proper purpose and in subjective good faith.  (*Hunting World, supra,* at p. 70.)

8

Section 405.33 provides another route to expungement even if a real property claim has probable validity—so long as the moving party shows that adequate relief can be secured by a monetary undertaking.[2] (*Hunting World, supra*, 22 Cal.App.4th at p. 73.) Section 405.38 changed the law by *requiring* (as opposed to merely authorizing) a court to award attorney's fees and costs to the party prevailing on a motion to expunge, unless the other party acted with substantial justification or other circumstances would make such an award unjust. (*Palmer v. Zaklama* (2003) 109 Cal.App.4th 1367, 1378.) The Legislature intended these revisions to discourage abuse and make it easier to remove a recorded lis pendens before trial. (*Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, 479; *Hunting World, supra,* at p. 73.)

Although the Legislature did not alter the definition of "real property claim" in 1992 (*Hunting World, supra*, 22 Cal.App.4th at p. 70), the legislative history explicitly recognized the conflicting case law and noted that the "definition of 'real property claim' neither includes nor excludes claims of constructive trust or equitable lien. Instead, the law in this area

---

[2] Section 405.33 also states: "For purposes only of determining under this section whether the giving of an undertaking will secure adequate relief to the claimant, the presumption of Section 3387 of the Civil Code that real property is unique shall *not* apply, except in the case of real property improved with a single-family dwelling which the claimant intends to occupy." (Italics added.) Phangureh did not move to expunge the lis pendens under section 405.33 and we express no opinion on the merits of any such motion. (Real Property Law Section, Cal. State Bar, com. on Assem. Bill No. 3620 (1991-1992 Reg. Sess.), com. 6, 3 Assem. J. (1993-1994 Reg. Sess.) pp. 4284-4285, reprinted as Code. Com., West's Ann. Code Civ. Proc. (2022 ed.), foll. § 405.33 ["essence of commercial activity is the earning of money; loss of a commercial investment opportunity can normally be offset by a pecuniary award"].)

is left for judicial development." (Real Property Law Section, Cal. State Bar, com. on Assem. Bill No. 3620 (1991-1992 Reg. Sess.), com. 5, 3 Assem. J. (1993-1994 Reg. Sess.) pp. 4273-4274, reprinted as Code. Com., West's Ann. Code Civ. Proc. (2022 ed.), foll. § 405.4.) The legislative history further indicates that, if courts continue to allow the use of lis pendens for constructive trust or equitable lien claims, the potential for abuse should be mitigated by the new provisions broadening the grounds for expungement. (*Ibid.*)

Our Supreme Court, in *Kirkeby, supra,* 33 Cal.4th 642, relied on these changes to the statutory scheme to implicitly discredit the approach employed by *BGJ Associates.* (*Kirkeby, supra,* at pp. 649-651 & fn. 6.)

*Kirkeby* concerned a fraudulent conveyance claim by which the plaintiff hoped to regain title to specific real property. The court noted this claim "[b]y definition . . . will affect title to or possession of real property." (*Kirkeby, supra,* 33 Cal.4th at p. 649.) The fact that the plaintiffs asserted 27 total causes of action, most of which sought damages, made no difference. (*Id.* at pp. 646, 648-651.) The court rejected the notion that, given the potential for abuse, it should look past the fraudulent conveyance claim to discern the plaintiffs' overarching purpose. (*Id.* at pp. 649-651 & fn. 6.) A motion under section 405.31 limits the court's review to the pleadings to determine whether the allegations state a real property claim as defined by section 405.4. (*Kirkeby, supra,* at pp. 650-651.) *Kirkeby* explained that it could not ignore the statute's plain language and that the concern over misuse was diminished by the 1992 amendments. (*Id.* at p. 651, citing §§ 405.32, 405.33.) If the definition of a real property claim proves problematic, "it is up to the Legislature—and not this court—to change the law." (*Kirkeby, supra,* at p. 651.)

10

**4.**

*Kirkeby* is not on all fours with this case, as it involved a fraudulent conveyance claim (*Kirkeby, supra*, 33 Cal.4th at p. 646)—a cause of action the Shokers have not alleged.  The *Kirkeby* court also emphasized that it was not addressing the question before us—whether a claim that seeks to impose a constructive trust may support a lis pendens.  (*Id.* at p. 650, fn. 7.)  However, we are compelled by our Supreme Court's reasoning to conclude that both the trial court and the *BGJ Associates* court erred.

The Shokers' causes of action against Phangureh allege that he wrongfully acquired their properties via a conspiracy (with Ghuman) involving fraud and breach of fiduciary duties.  The Shokers further allege that they are entitled to a constructive trust returning those same real properties to them.  (See Civ. Code, § 2224; *Calistoga Civic Club v. City of Calistoga* (1983) 143 Cal.App.3d 111, 116.)  As in *Kirkeby*, the Shokers' claim falls squarely within the plain language of the statute: it "would, if meritorious, affect . . . title" to real property.  (See Code Civ. Proc, § 405.4; *Kirkeby, supra,* 33 Cal.4th at pp. 650-651.)

To the extent that the trial court dismissed the import of this real property claim by looking beyond it, in apparent reliance on *BGJ Associates, supra,* 75 Cal.App.4th at pp. 971-972, the trial court erred.  *Kirkeby* rejected the argument that a court may disregard a well-pled real property claim simply because the plaintiff also seeks money damages.  (*Kirkeby, supra*, 33 Cal.4th at pp. 649-651.)  Moreover, section 405.4 does not restrict a lis pendens to actions where a real property claimant *only* seeks title to, or possession of, specific real property.  In fact, it defines a " '[r]eal property claim' " to mean "*the cause or* causes of action in a pleading which would, if meritorious, *affect* . . . title to, or the right to possession of, specific real property."  (Italics added.)

11

Like the *Kirkeby* court, we decline to narrow the statute under the guise of judicially supplementing the Legislature's remedies for potential abuse of lis pendens. (§§ 405.32, 405.33, 405.38; *Kirkeby, supra*, 33 Cal.4th at p. 651.) This result serves the statute's aim to preserve the status quo during litigation (see *Bishop Creek Lodge v. Scira, supra*, 46 Cal.App.4th at p. 1732) while also recognizing a plaintiff's right to plead alternative remedies. (*Steele v. Litton Industries, Inc*. (1968) 260 Cal.App.2d 157, 172; cf. *Urez, supra*, 190 Cal.App.3d at p. 1147.) A trial court has additional ways to ferret out abuse—by reviewing the evidence supporting the real property claim (§ 405.32) or requiring an undertaking (§ 405.33)—which would also provide a more complete record for an appellate court to review.

In reaching this conclusion, we note that we need not decide the continuing validity of the other cases in the *Urez* line. The case law distinguishes between two subtypes of constructive trust claims. First, there are constructive trust claims that are akin to fraudulent conveyance claims because they seek a constructive trust on real property that was itself wrongfully taken and, if successful on the merits, plaintiffs would regain title to or possession of the same property. On the other hand, there are claims seeking a constructive trust or equitable lien on different property, merely as a means to secure collection of a debt. (*La Paglia v. Superior Court, supra,* 215 Cal.App.3d at pp. 1327, 1329; *Campbell v. Superior Court* (2005) 132 Cal.App.4th 904, 912 , *id*. at p. 918 ; *Burger v. Superior Court, supra*, 151 Cal.App.3d at p. 1019.)

Here, we are dealing with the former type of constructive trust claim—the Shokers claim a present right to title in the same real properties they claim were wrongfully obtained by Phangureh. (See *Warren v. Merrill* (2006) 143 Cal.App.4th 96, 114 ["when legal title has been acquired through fraud any number of remedies are available and appropriate," including

12

making legal title holder constructive trustee for benefit of defrauded equitable titleholder].) With the exception of *BGJ Associates*, the *Urez* line of cases deals with the latter use of constructive trust—where the plaintiff seeks to impose a constructive trust or equitable lien on real property only as a means to secure a debt. (See, e.g. *Urez, supra*, 190 Cal.App.3d at p. 1149; *Lewis v. Superior Court, supra,* 30 Cal.App.4th at pp. 1860, 1862-1863.)

Because constructive trusts arise in a wide variety of factual circumstances, courts should decide these cases on a case-by-case basis. To the extent any cases within the *Urez* line can be read as holding that a constructive trust claim can *never* constitute a real property claim under section 405.4, we respectfully disagree.

**5.**

Phangureh's suggestion—that a constructive trust claim can never be a real property claim because constructive trust is a remedy and not a cause of action—is also unpersuasive. After all, no one doubts that an action seeking specific performance supports a lis pendens. (*BGJ Associates, supra*, 75 Cal.App.4th at pp. 967-968, 970-971.) And specific performance is a remedy for breach of contract. (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 49.) Indeed, the statutory definition of a real property claim is based, in part, on the remedy—how a successful cause of action would "affect" title or possession of a property. (§ 405.4.)

The trial court erred by granting Phangureh's section 405.31 motion to expunge the lis pendens. Because the probable validity motion (§ 405.32) and any award of fees should be decided by the trial court in the first instance, we need not address the Shokers' additional arguments.

13

**DISPOSITION**

Let a peremptory writ of mandate issue directing the superior court to vacate its order expunging the notice of lis pendens and to conduct further proceedings addressing the pending motion on probable validity of the Shokers' real property claim. The Shokers are to recover their costs in this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

_____

BURNS, J.

We concur:

_____

JACKSON, P.J.

_____

SIMONS, J.

A163711

Alameda County Superior Court No. RG19036992, Hon. Dennis Hayashi.

Seifert Zuromski LLP and Mark J. Seifert; Katz Appellate Law PC and Paul J. Katz for Petitioners.

Jahangiri Law Group and Lubna Jahangiri; Hanson Bridgett LLP and Andrew W. Stroud, Adam W. Hofmann for Real Party in Interest.